**Emmanuel D. PATTERSON,
Plaintiff-Appellant,**

v.

**Thomas A. COUGHLIN, III, Charles P. Hernandez (sic Charles P. Hermanderz), Harold J. Smith, N. DeSantos, Defendants-Appellees.**

**No. 904, Docket 84–2266.**

United States Court of Appeals,
Second Circuit.

Argued March 12, 1985.
Decided May 9, 1985.

Robert B. Calihan, New York City, for plaintiff-appellant.

Martin A. Hotvet, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen., and Robert Hermann, Sol. Gen., Albany, N.Y., on the brief), for defendants-appellees.

Before TIMBERS, CARDAMONE and PIERCE, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal is from a judgment entered December 5, 1983 in the Western District of New York, Michael A. Telesca, *District Judge*, dismissing a pro se complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The appeal presents the question of whether a claim is stated under 42 U.S.C. § 1983 (1982) when the complaint alleges that a state prisoner was placed in isolation by state officials in violation of state law and without being afforded a prior hearing that conforms to the due process requirements enunciated in *Wolff v. McDonald*, 418 U.S. 539 (1974). The district court held that *Parratt v. Taylor*, 451 U.S. 527 (1981), required dismissal of the complaint because the state provides an adequate postdeprivation remedy. We disagree. We reverse and remand.

I.

For purposes of this appeal we accept as true the allegations set forth in the complaint. We summarize only those facts and prior proceedings believed necessary to an understanding of our rulings on the legal issues raised on appeal.

Appellant Emmanuel D. Patterson is, and at all times relevant to this action was, an inmate of the Attica Correctional Facility at Attica, New York. Appellees are Thomas A. Coughlin III, the Commissioner of the New York State Department of Correctional Services; Harold J. Smith, the Commissioner of the Attica Correctional Facility; Charles P. Hernandez, Director of the Special Housing Review Board; and N. DeSantos, a Captain at Attica.

On April 9, 1982, a fight broke out between two other inmates at Attica. Appellant, who asserts that he was not involved in the altercation, was placed in the facility's Special Housing Unit (SHU). On April 12, appellant appeared before the Prison Adjustment Committee and was charged with "Assault 1.5 and Interference with an employee 1.75". A Superintendent's Hearing was convened on April 16 to consider the charges but was adjourned until April 20.

Appellee DeSantos was the hearing officer at the April 20 hearing. The only wit-

ness who testified was the guard who claimed to be the subject of appellant's alleged assault. Appellant was not permitted to call any witnesses in his defense nor did DeSantos interview any such witnesses. Appellant was found guilty of both charges. He was sentenced to confinement in the SHU for sixty days and loss of sixty days "good time". Appellant appealed the decision at the Superintendent's Hearing to appellees Smith and Coughlin. On July 21, 1982, that decision was affirmed by the Housing Review Board.

In the meanwhile, appellant filed an Article 78 proceeding in the Supreme Court of the State of New York, County of Wyoming, in which he sought immediate release from the SHU and restoration of the sixty days good time. Just prior to his scheduled appearance in the Supreme Court, and shortly before his sixty-day sentence had been served,[1] he was released from the SHU. A hearing was held in the Supreme Court on June 10, 1982. Appellees at that hearing were ordered to produce the record of the Superintendent's Hearing. That record was never produced. A second hearing was held in the Supreme Court on February 25, 1983.

On March 4, 1983, the Supreme Court entered an Order of Stipulation dismissing appellant's petition with prejudice but ordering that appellees "through their agents or employees not hold the [appellant] in confinement in Attica'[s] Special Housing Unit because of the disposition issued at [appellant's] Superintendent's Proceeding

of April 20, 1982 at the Attica Correctional Facility." The order specifically provided that appellees had stipulated to restore appellant's good time and to expunge any reference to the disciplinary proceeding from appellant's file.

On or about April 6, 1983, appellant filed his pro se complaint, on a form used by prisoners who are not represented by counsel, in the District Court for the Western District of New York. At the same time, he moved for leave to proceed in forma pauperis and for appointment of counsel; on May 10, 1983, Judge Telesca granted the former, but denied the latter.[2]

On August 15, 1983, appellees moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief could be granted, or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Apparently no documentary evidence ever was produced, despite the district court's order of August 1, 1983 requiring production of the record of the Superintendent's Hearing.[3] The district court, treating the motion as one under Rule 12(b)(6), dismissed the complaint in a Memorandum Decision and Order dated December 5, 1983 which in relevant part states:

"In the present case, plaintiff alleges that defendants failed to strictly comply with the procedures established in New York's Code of Rules and Regulations for Confinement in a Special Housing Unit. Because the procedures existed, but were allegedly not followed, no

---

1. Appellant alleges that he was detained in the SHU for a total of 65 days—12 days while the Superintendent's Hearing was pending and 53 days of disciplinary detention. Since the Superintendent's Hearing was constitutionally deficient, as appellees concede, it is as if appellant never received a hearing at all. It therefore is unnecessary for us to determine whether the 12 days spent in the SHU before the hearing was unconstitutionally lengthy. *See Powell v. Ward,* 542 F.2d 101, 103 (2 Cir.1976) (requiring disciplinary hearing within seven days of confinement in the SHU).

2. On this appeal, appellant has been represented by able counsel appointed by this Court.

3. In a letter dated June 28, 1983 addressed to Judge Telesca, appellees' counsel, an Assistant Attorney General for the State of New York, stated that the Attica Facility no longer maintained the records that the district court ordered to be produced because the state had expunged appellant's file pursuant to the Order of Stipulation entered in the state court in the Article 78 proceeding. We note that no explanation for the failure to produce the record in the state court in the Article 78 proceeding is found in the record on this appeal. The Assistant Attorney General stated in his letter to Judge Telesca, however, that copies might be available from other sources. We assume that, upon the remand which we are ordering, those copies will be produced.

meaningful predeprivation hearing was possible.... Plaintiff did seek redress pursuant to New York Civil Practice Law and Rules Article 78 to force defendants to comply with the established procedures and thus, was given an opportunity to be heard at a meaningful time and in a meaningful manner."

As indicated above, we reverse and remand, for the reasons stated below.

## II.

Recovery under 42 U.S.C. § 1983 (1982) is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Appellant here alleges a deprivation of his liberty interest and a denial of the procedural safeguards guaranteed by the due process clause of the Fourteenth Amendment. That the liberty interest at issue here is of constitutional dimension is not contested. *E.g., Hewitt v. Helms*, 459 U.S. 460, 472 (1983); *Sher v. Coughlin*, 739 F.2d 77, 81 (2 Cir.1984). Moreover, it is not claimed that the officials' conduct did not amount to "state action", which is a prerequisite to finding a constitutional violation, or that it did not occur under color of state law. The only issue presented for our decision, therefore, is whether, upon the facts alleged in the complaint, there has been a denial of constitutionally-mandated procedures.

In its simplest formulation, due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2 Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 328 (1984). Determining precisely the process that is due, however, is more complicated than this simple statement might suggest. The level of procedural safeguards that must be afforded before the government may deprive an individual of a protected interest is determined by reference to (1) the private interest at stake, (2) the risk of error inherent in the use of one form of procedure over another, and (3) the interest of the government. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See also Cleveland Board of Education v. Loudermill*, —— U.S. ——, ——, 105 S.Ct. 1487, 1494 (1985); *Hewitt v. Helms, supra*, 459 U.S. at 473. Thus, a tenured public employee is guaranteed notice of the charges against him, an explanation of the evidence in the employer's favor and an opportunity to present "his side of the story" *before* his employment is terminated. *Loudermill, supra*, —— U.S. at ——, 105 S.Ct. at 1495. Moreover, a formal postdeprivation evidentiary hearing must be provided before the employee's loss may become final. *Id.*, —— U.S. at——, 105 S.Ct. at 1496.

The procedural safeguards that are required when an individual's liberty is at stake must at least equal those required before he may be deprived of his property, even when the individual's liberty already is curtailed by the fact of being incarcerated in a correctional facility. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Thus, an inmate who is facing prison disciplinary charges that could result in punitive segregation is entitled, at a minimum, to advance written notice of the charges against him and of the evidence available to the factfinder. He must be permitted to marshal the facts and prepare his defense. A written record of the proceedings must be kept. The inmate must be allowed to call witnesses and present documentary evidence in his defense. *Id.* at 564–66; *McCann v. Coughlin*, 698 F.2d 112, 120–21 (2 Cir.1983).

In *Hewitt v. Helms, supra*, the Supreme Court held that administrative segregation of a prison inmate—where the inmate posed a threat to the safety of other inmates and prison employees and where an investigation into the charges against the inmate was continuing—required only "an informal, non-adversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit,

within a reasonable time after confining him to administrative segregation." *Id.* at 472. Where, as here, the state can show no such compelling interest, and the sole purpose of the confinement is punishment, the *Mathews* balancing test tips in favor of the inmate's liberty interest. The state, therefore, is required to provide the procedures required by *Wolff.*

In the instant case, appellees "concede[ ] that the [appellant] was placed in SHU and deprived of his liberty after a Superintendent's Proceeding which failed in certain particulars to conform to the requirements of procedural due process established in *Wolff v. McDonnell,* 418 U.S. 539 (1974)." Appellees argue, despite the conceded infirmities in the predeprivation hearing, that no due process violation resulted from the hearing officer's failure to follow the state's own rules, which conform to the requirements set forth in *Wolff.* The district court held that "[b]ecause the procedures existed, but were allegedly not followed, no meaningful predeprivation hearing was possible." Appellees urge this proposition on appeal. They further urge that the Article 78 postdeprivation remedy, the mere threat of which resulted in appellees stipulating to appellant's release after 65 days confinement, was sufficient to satisfy due process. Appellees place heavy reliance on *Parratt v. Taylor,* 451 U.S. 527 (1981). We fail to see either the logic of appellees' argument or the connection between the instant case and *Parratt* or the Supreme Court's subsequent decision in *Hudson v. Palmer,* 468 U.S. ——, 104 S.Ct. 3194 (1984).

■ Although a state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983, *Davis v. Scherer,* 468 U.S. ——, ——, 104 S.Ct. 3012, 3019 (1984); *Pollnow v. Glennon,* 757 F.2d 496, 501 (2 Cir.1985), the state regulation that

was violated in the instant case merely reiterated what already was *required* by the Constitution. It has long been settled that unconstitutional conduct that *also* violates state law is still actionable under § 1983, *e.g., Monroe v. Pape,* 365 U.S. 167, 187 (1961); *Screws v. United States,* 325 U.S. 91, 109–11 (1945) (plurality opinion); *United States v. Classic,* 313 U.S. 299, 326 (1941); *Home Tel. & Tel. Co. v. Los Angeles,* 227 U.S. 278, 282–85 (1913), and that exhaustion of state tort and administrative remedies is not required. *Monroe, supra,* 365 U.S. at 183; *Patsy v. Board of Regents,* 457 U.S. 496, 516 (1982).

■ Allegations of procedural due process violations by certain individual government employees, as opposed to direct challenges to state procedures or the lack thereof, have long been accepted as constituting state action and forming the basis for a claim under the civil rights statutes. *See, e.g., Monroe, supra,* 365 U.S. at 172; *Home Tel. & Tel. Co., supra,* 227 U.S. at 278, 282–85; *Mansell v. Saunders,* 372 F.2d 573, 576 (5 Cir.1967).[4] The requirements of the due process clauses are directed specifically to the federal and state governments. They require the promulgation of laws and regulations providing for regular procedures which the government must follow before it may deprive an individual of life, liberty or property. The execution of those laws and regulations also must conform to due process; otherwise the due process clause, with its guarantees of regular and predictable procedures, becomes a cipher. It is beyond cavil that due process requires more than the mere *promulgation* of laws and regulations which, if followed, would preserve the most fundamental of rights.

■ In *Parratt,* the Supreme Court based its decision, in part, on the fact that

---

4. As Justice Harlan stated in his concurrence in *Monroe:*

"No one suggests that there is a difference in the showing the plaintiff must make to assert a claim under § 1983 depending upon whether he is asserting a denial of rights secured by

the Equal Protection Clause or a denial of rights secured by the Due Process Clause of the Fourteenth Amendment."

*Monroe, supra,* 365 U.S. at 199 (Harlan, J., concurring).

"the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Parratt, supra,* 451 U.S. at 543. Appellees here argue, based on this statement, that no predeprivation hearing was possible in the instant case because the procedures provided for by the state were not followed.

First, appellees, and the district court, apparently confuse the deprivation of a liberty interest with the denial of the constitutional right to procedural safeguards which is implicated by that interest. It must be remembered that the Constitution does not prohibit deprivations of liberty per se. The Constitution prohibits deprivations of liberty *without due process.* The denial of a constitutionally-sound predeprivation hearing is a separate and distinct injury from the loss of liberty.

■ Second, although the denial of due process may have been "unauthorized", the deprivation of liberty at issue here does *not* appear to have been "unauthorized" as that term is meant by *Parratt. Hudson v. Palmer, supra,* makes clear that the question of whether the deprivation of a protected interest was negligent or intentional is not of constitutional dimension. What does matter, however, is whether the conduct of the state's agent that resulted in the deprivation was such as to make the injury unforeseeable when viewed from the position of one who possesses the state-delegated authority to grant a hearing when circumstances and the Constitution so require. It is at least a question of fact whether the decision to place appellant in the SHU was made by "officials with final authority" over that decision. *Burtnieks v. City of New York,* 716 F.2d 982, 986 (2 Cir.1983). Unlike the deprivation of property that occurred in *Parratt,* here the responsible state officials who had the power to grant appellant a hearing obviously knew that appellant was in peril of being deprived of his liberty interest. In fact, he was *given* a hearing, albeit a deficient one. Thus, the deprivation of liberty was neither "random" nor "unauthorized". *See Loud-*

*ermill v. Cleveland Board of Education,* 721 F.2d 550, 562 (6 Cir.1983), *aff'd,* —— U.S. ——, 105 S.Ct. 1487 (1985); *Burtnieks, supra,* 716 F.2d at 988–89.

■ Finally, *Parratt* did not alter the fundamental tenets of due process. *Parratt, supra,* 451 U.S. at 544. Absent some exigency that requires summary action by the state, *e.g., Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594 (1950); *North American Cold Storage Co. v. Chicago,* 211 U.S. 306 (1908), or circumstances that render a predeprivation hearing impossible as a practical matter as in *Parratt,* the opportunity to be heard *before* the state deprives an individual of life, liberty or property is still the " 'root requirement' " of the due process clause. *Loudermill, supra,* —— U.S. at ——, 105 S.Ct. at 1493, *quoting Boddie v. Connecticut,* 401 U.S. 371, 379 (1972). It is abundantly clear that disciplinary segregation implicates a sufficiently strong liberty interest as to require notice of the charges and, as the word "hearing" suggests, *some* opportunity to present a defense. *Wolff, supra,* 418 U.S. at 563–72; *McCann v. Coughlin, supra,* 698 F.2d at 121; *Powell v. Ward, supra,* 542 F.2d at 104. The opportunity to be heard at a meaningful time and in a meaningful manner has not been satisfied when the first such real opportunity is afforded after an inmate has already been in the SHU for 65 days. "The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Loudermill, supra,* —— U.S. at ——, 105 S.Ct. at 1493. Since appellant was denied such adequate procedures before punitively being deprived of his liberty, and since it was not impossible or impracticable to provide such procedures, the conclusion is inescapable that appellant was denied due process. *Parratt* and the other cases upon which appellees rely are not to the contrary. In those cases to which the reasoning of *Parratt* was ap-

plied to deprivations of liberty, the deprivation itself was "random and unauthorized" and a predeprivation hearing was impossible. *E.g., Thibodeaux v. Bordelon,* 740 F.2d 329, 338 (5 Cir.1984); *Daniels v. Williams,* 720 F.2d 792, 795 (4 Cir.1983), *cert. granted,* —— U.S. ——, 105 S.Ct. 1168, 84 L.Ed.2d 320 (1985). *Parratt* and its progeny are inapposite here.

### III.

In view of our holding that an adequate prior hearing was required, a post-deprivation hearing, by way of an Article 78 proceeding or an action for damages in the Court of Claims, is inadequate, by definition, to meet the requirements of due process. This may be tautological, but it is a point that appears to have been missed by appellees and by the district court. Once a cause of action for a constitutional violation accrues, nothing that the state does subsequently can cut off the § 1983 claim.

To summarize: We hold that, on the facts alleged in the complaint, the deprivation of appellant's liberty was neither random nor unauthorized and, as such, the state, through its agents, was obligated to provide an adequate hearing *before* the decision to discipline appellant was made final. We therefore reverse the judgment of the district court dismissing the complaint for failure to state a claim and remand for further proceedings consistent with this opinion.

Reversed and remanded.