Emmanuel D. PATTERSON,
Plaintiff–Appellee,

v.

Thomas A. COUGHLIN, III; Charles P. Hemandy; Harold J. Smith; N. DeSantos, Defendants–Appellants.

No. 990, Docket 89–2456.

United States Court of Appeals, Second Circuit.

Argued·March 15, 1990.

Decided May 16, 1990.

Robert L. King, Rochester, N.Y. (Falk, Manske, Couture & King, Rochester, N.Y., on the brief), for plaintiff-appellee.

Martin A. Hotvet, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Asst. Atty. Gen., Albany, N.Y., on the brief), for defendants-appellants.

Before KEARSE, CARDAMONE and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

In this appeal, our second encounter with this matter, defendants Thomas A. Coughlin, III, *et al.*, prison officials of the State of New York (collectively the "State"), challenge a final judgment of the United

States District Court for the Western District of New York, Michael A. Telesca, *Judge,* awarding plaintiff Emmanuel D. Patterson, a State prisoner, $5,300 in damages for his improper confinement in a prison special housing unit following a disciplinary hearing at which, as this Court ruled in *Patterson v. Coughlin,* 761 F.2d 886 (2d Cir.1985) (*"Patterson I"* ), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986), Patterson was denied due process. Following our remand in *Patterson I,* the district court granted summary judgment to Patterson. On appeal, the State contends that summary judgment was improper because there were genuine issues of fact as to causation and damages. For the reasons below, we conclude that the district court properly granted Patterson partial summary judgment as to liability but that the State was entitled to a jury trial on the issue of damages.

## I. BACKGROUND

### A. *The Events*

The following facts do not appear to be contested. At the times in question, Patterson was an inmate at the State's Attica Correctional Facility ("Attica"). On April 9, 1982, a fight broke out between inmate Oscar Hall and another inmate. Subsequently it was alleged that Patterson assaulted and interfered with a correction officer who was attempting to break up the fight, and Patterson was accordingly charged with assault. Patterson contended that he had not assaulted the guard but had merely broken up the fight between the other inmates, and he asked that two inmates, Hall and one Carter (whose first name is now unknown), be heard as witnesses in his defense.

Patterson's disciplinary hearing was conducted by defendant N. DeSantos, who heard testimony only from Patterson and the guard who made the assault charge. Patterson was not permitted to call any witnesses in his defense; nor did DeSantos interview Hall or Carter. DeSantos apparently reviewed Hall's testimony from Hall's own disciplinary hearing; DeSantos stated that he had been unable to interview Carter because "Carter, who locks on 40/23, was on a trailer visit." DeSantos found Patterson guilty of assault and sentenced him to confinement in the Attica special housing unit ("SHU") for 60 days and to loss of 60 days' "good time."

Patterson administratively appealed this determination without success. Thereafter, he filed a proceeding in state court pursuant to N.Y. Civ. Prac.L. & R. Art. 78 (McKinney 1981 & Supp.1990), following which defendants stipulated to release him from SHU, restore his good time, and expunge any reference to the disciplinary proceeding from his file. By the time Patterson was released, he had been confined in SHU for 53 days.

Shortly after the conclusion of the Article 78 proceeding, Patterson filed his present complaint under 42 U.S.C. § 1983 (1982), seeking damages for, *inter alia,* the denial of his right to have witnesses heard in his behalf at the disciplinary hearing. The district court dismissed his complaint on the ground that the Article 78 proceeding adequately protected his rights. In *Patterson I,* we reversed, ruling that (1) because the State had not sought to show that there was any compelling institutional interest in refusing to call Patterson's witnesses, due process required it to call those witnesses, and (2) a postconfinement Article 78 proceeding is insufficient to protect this due process right. Accordingly, we remanded for further proceedings.

### B. *The Proceedings on Remand After Patterson I*

Both in connection with the appeal in *Patterson I* and in the district court after remand, defendants conceded that the denial of the right to present witnesses at the hearing violated Patterson's right to due process. On remand, however, defendants moved for summary judgment dismissing the complaint. Insofar as is pertinent to this appeal, the ground of the motion was that Patterson had the burden of proving that the denial caused him injury, *see McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983), and that he could not show that if he had been allowed to call witnesses at

the disciplinary hearing he would not have been convicted of assault and confined to SHU. Defendants argued that Patterson could not show that DeSantos would have rendered a different decision (a) on the basis of the testimony of Hall, since DeSantos had already heard Hall's version of the facts during Hall's own disciplinary hearing, or (b) on the basis of the testimony of Carter, since Carter had never given any prison official his version of the events and, Carter's whereabouts and first name now being unknown, he could not be located to reveal his version.

The district court rejected this argument, denying defendants' motion for summary judgment and in effect granting partial summary judgment on the liability issue to Patterson:

> [T]he Second Circuit concluded that plaintiff was deprived of a fair hearing in violation of his constitutional rights. That deprivation caused him to be placed in SHU where he almost served his entire 60–day sentence. This wrongful placement is the actual injury which is compensable.... However, because plaintiff has not moved for summary judgment I cannot, at this time, award damages. Nevertheless, as a matter of law plaintiff is entitled to more than nominal damages for the constitutional deprivation occasioned upon him.
>
> .... Plaintiff has suffered an actual injury entitling him to compensatory damages which shall be assessed jointly and severally against the defendants. Plaintiff is, therefore, invited to move for summary judgment on the issue of damages.

Decision and Order dated February 1, 1989 ("Feb. 1989 Decision"), at 7–8.

Patterson accepted the court's invitation to move for summary judgment on the damages issue. He pointed to cases in which the damages awarded for illegal SHU confinements ranged from $25 to $83.33 per day. He argued that, using the latter figure and adjusting for inflation, he would be entitled to damages of $147.53 per day. For his 53 days' SHU confinement, therefore, Patterson asked the court to award him a total of $7,819.58. Defendants opposed the motion, arguing that the awards relied on by Patterson had been made only after trial, and they asserted their right to trial on this issue.

The court granted Patterson's motion. In an opinion reported at 722 F.Supp. 9 (1989), it stated, in pertinent part, as follows:

> This Court has already concluded that the plaintiff's wrongful confinement in SHU constitutes a compensable injury under § 1983 entitling him to more than nominal damages. The only issue, therefore, is the measure of relief that he should be awarded....
>
> ....
>
> There is no dispute on the record that the plaintiff was wrongfully confined in SHU for 53 days. As the nature and extent of plaintiff's injury "may be inferred from conditions and length of ... confinement," [*H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1088 (11th Cir. 1986)], I see no reason to conduct a separate evidentiary hearing here. Previous experience with Attica's Special Housing Unit, both through personal visits as well as through cases before this Court ... have made me all too familiar with the comparatively harsher conditions suffered by prisoners sentenced to SHU....
>
> Although it is difficult to arrive at a monetary sum that can fairly compensate an individual for wrongfully suffering such deplorable conditions, prior cases dealing with this issue have established $25–$100 per day as the appropriate range of permissible relief.... In light of the standards established by these cases and the extended period for which the plaintiff was wrongfully confined, I conclude that he is entitled to $100 per day for the time he spent in SHU. Accordingly, plaintiff is to be awarded $5,300 in compensatory damages.

*Id.* at 10–11 (footnote omitted).

Judgment was entered in favor of Patterson in the amount of $5,300, and this appeal followed.

## II. DISCUSSION

On appeal, the State contends principally (1) that Patterson is not entitled to more than nominal damages because the record demonstrates that he would have been found guilty of the assault charges and placed in SHU even if his witnesses had testified, and (2) that even if the due process violation is established as the cause of Patterson's SHU confinement, defendants are nonetheless entitled to a jury trial on the amount of damages. For the reasons below, we reject the first contention but find merit in the second.

We note that in a terse footnote, defendants also suggest that Coughlin and Smith should not have been held liable because they had "no personal responsibility for the actions taken." This contention does not warrant extended discussion. Patterson had appealed DeSantos's ruling to Coughlin and Smith, *see, e.g., Patterson I,* 761 F.2d at 889, and the district court found that they "were personally involved in the present case" in affirming the outcome of the disciplinary proceeding, Feb. 1989 Decision at 5. The State has shown no basis for concluding that this finding was erroneous.

### A. *Deprivation, Causation, and Burden of Proof*

On the issue of liability, defendants contend that the district court (1) erred in ruling that the mere fact of Patterson's SHU confinement established injury and causation, and (2) should have granted summary judgment in their favor because Patterson had the insurmountable burden of showing that if he had been allowed to present his witnesses at the disciplinary hearing, he would have been found innocent of the assault charges and thus would not have been confined to SHU. While we think the district court's statement of the basis for ruling in Patterson's favor on liability was perhaps elliptical, we reject the State's challenge to the outcome.

 The district court stated that defendants' conceded "deprivation caused [Patterson] to be placed in SHU where he almost served his entire 60–day sentence.

This wrongful placement is the actual injury which is compensable." To the extent that this statement suggests that compensable injury automatically followed the due process violation, we disagree with it. It is clear that where there has been a denial of due process, the victim is entitled at least to nominal damages. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978). Nonetheless, *Carey* also made it clear that even where a denial of due process has been followed by a liberty deprivation, unless the deprivation was caused by the violation the plaintiff is limited to nominal damages. *Id.* at 263, 98 S.Ct. at 1052 ("injury caused by a *justified* deprivation . . . is not properly compensable under § 1983" (footnote omitted; emphasis added)).

 In the present case, it is true that the State violated Patterson's right to due process when it found him guilty and placed him in SHU without allowing him to call witnesses at his disciplinary hearing; but if Patterson would have been found guilty of assault and confined to SHU even if his witnesses had been called, his confinement in SHU must be considered a justified deprivation of liberty, not a deprivation caused by the State's failure to permit him to call those witnesses. In sum, though the confinement in SHU deprived Patterson of such liberty as his status as an ordinary inmate allowed him, that confinement did not automatically entitle him to more than nominal damages. *See McCann v. Coughlin,* 698 F.2d at 126–27.

In *McCann,* we indicated that the burden was on the plaintiff inmate to show that the challenged disciplinary action would not have been taken if he had been allowed to present a defense. *Id.* at 126; *accord Graham v. Baughman,* 772 F.2d 441, 446 (8th Cir.1985). *Contra Piphus v. Carey,* 545 F.2d 30, 32 (7th Cir.1976) (defendants have burden of proving that plaintiffs would have been suspended even if a proper hearing had been held), *rev'd on other grounds,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Alexander v. Polk,* 750 F.2d 250, 263–64 (3d Cir.1984) (defendants have burden of proving that plaintiffs

would have suffered deprivation even if due process rights had been respected); *Franklin v. Aycock,* 795 F.2d 1253, 1263–64 (6th Cir.1986) (same); *Wheeler v. Mental Health & Mental Retardation Authority,* 752 F.2d 1063, 1071–72 (5th Cir.) (same), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). Urging that *McCann* be applied here, defendants contend that they are entitled to summary judgment on the theory that Patterson cannot establish the required causation for two reasons. First, they argue that Patterson has no way of proving what testimony Carter would have given because Carter's first name is no longer known and he cannot be found. As defendants formulated this argument in the district court, proof as to what Carter would have testified

> is clearly unavailable to [Patterson], since he has not spoken or corresponded with Carter since the incident in question and cannot state what, if anything, Carter saw.... Carter is apparently unavailable as a witness at present since his first name and other identifying data are unknown by the parties.

Second, they argue that even with the testimony of both Hall and Carter at the hearing, Patterson would have been found guilty because (a) the testimony of Hall and Carter would merely have corroborated the version testified to by Patterson himself, and (b) DeSantos would have disbelieved it. Thus, they contend that "the undisputed facts" show that Patterson would have been convicted and punished even if his witnesses had been called. We have several difficulties with these arguments.

First, contrary to defendants' characterization, the facts were hardly undisputed. Though the guard charged that Patterson had assaulted him, Patterson denied that assertion and testified that he had merely broken up the fight between Hall and the other inmate. Further, the record contains the report of an interview of Hall by SHU Correction Counselor Frank Dolce which contradicted the guard's testimony. The Dolce memorandum to DeSantos stated as follows:

Inmate HALL, Oscar 77–B–1697 was interviewed this date by me regarding charges of assault brought against Patterson, 79–B–1572.

Inmate Hall stated that Patterson had nothing to do with the assault on the Correction Officer, indeed it was Patterson that broke up the fight between Hall and another inmate. The fight was broken up by Patterson when the Correction Officer came upon the scene. Hall further stated that he does not know how Patterson was locked up on this charge when all he did was break up the fight. He would also like to be called as a witness for Patterson.

Hall's statement in this interview was in no way inconsistent with his testimony at his own hearing on disciplinary charges. It is true that Hall did not affirmatively state in that testimony that Patterson had not assaulted the guard; but the alleged assault by Patterson was not an issue in the proceeding against Hall, and DeSantos did not ask him any questions on that matter.

█ Second, to the extent that the record is silent as to what Hall and Carter would have testified in response to questions pertinent to the charge against Patterson, the State is not entitled to rely on that record to show that Patterson would have been found guilty of that charge, since the record's silence is the result of the State's violation of Patterson's due process rights. It is also clear that at the time of the hearing, the State must have known who Carter was, since DeSantos told Patterson he had not been able to reach Carter because he was on "trailer" leave. Responsibility for the "loss" of Carter because the State no longer knows his first name must be laid squarely at the door of the State and no one else.

█ Finally, we cannot endorse the State's bottom-line argument that no matter how sincerely, unequivocally, or apparently truthfully Patterson's witnesses might have testified in support of Patterson's version of the facts, DeSantos would not have believed them. An inmate subject to a disciplinary hearing is entitled to, *inter alia,* an impartial hearing officer. *See,*

*e.g., Wolff v. McDonnell,* 418 U.S. 539, 570–71, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974). Our conception of an impartial decisionmaker is one who, *inter alia,* does not prejudge the evidence and who cannot say, with the utter certainty advanced by these defendants, how he would assess evidence he has not yet seen. *See, e.g., Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir. 1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

■ We conclude that even as to an issue on which the plaintiff normally has the burden of proof, it would be inappropriate to rule that the defendants should prevail where they have made proof impossible. *Cf. Memphis Community School District v. Stachura,* 477 U.S. 299, 310–11, 106 S.Ct. 2537, 2545, 91 L.Ed.2d 249 (1986) ("When a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate.") Given the deficiencies of the disciplinary hearing record and the apparently irretrievable loss of Carter's testimony, both of which the State could have avoided, and the proof that Hall would have testified in support of Patterson's version of the events, we conclude that in the present case the burden had shifted to the State to show that even if Hall and Carter had been called, Patterson would have been found guilty of assault and confined to SHU. The State has not asked that it be permitted to go to trial on the issue of causation if we conclude that it has the burden of proof in these circumstances, undoubtedly because it could not carry that burden, given the unavailability of Carter. Accordingly, we agree with the district court that Patterson had done all that was required of him to establish that his confinement to SHU was an injury caused by defendants' denial of his due process right to call witnesses.

### B. *The Issue of Damages*

On the issue of damages, defendants argue that the district court should not have entered summary judgment against them

and that they were entitled to a jury trial. We agree.

■ The party seeking summary judgment bears the burden of establishing that no genuine dispute as to a material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The evaluation of the injury suffered by a plaintiff, unless damages have been liquidated or otherwise stipulated, is normally a question of fact to be decided by the factfinder after trial, not a matter for summary judgment. *See, e.g., Fay v. South Colonie Central School District,* 802 F.2d 21, 33–34 (2d Cir.1986); 6 Pt. 2 *Moore's Federal Practice* ¶ 56.17[18], at 56–449 to 56–450 (2d ed.1988); *cf. Larkins v. Oswald,* 510 F.2d 583, 589 (2d Cir.1975) ("Particularly in a civil rights case the amount of damages is a question for the jury's determination.").

■ Patterson's motion for summary judgment was not of the traditional sort, since it made no effort to show that the amount of damages to which he was entitled was undisputed. The State opposed the motion, contesting the amount requested and pointing out that the amounts cited by Patterson had been awarded after trial, not on summary judgment. This argument had merit, and the court should not have awarded summary judgment as to damages.

■ Finally, as to this issue, the State was entitled to trial by jury. Patterson had requested a jury trial in his complaint, and defendants were entitled to rely on that request to preserve their own right to a jury trial. *See* Fed.R.Civ.P. 39(a) (after jury trial properly demanded, trial must be by jury unless all parties stipulate to the contrary in writing or on the record); *Gargiulo v. Delsole,* 769 F.2d 77, 79 (2d Cir. 1985); *Rosen v. Dick,* 639 F.2d 82, 91 (2d Cir.1980); *State Mutual Life Assurance Co. of America v. Arthur Andersen & Co.,* 581 F.2d 1045, 1050 (2d Cir.1978); 5 *Moore's Federal Practice* ¶ 38.40, at 38–381 (2d ed.1988); *id.* ¶ 38.45, at 38–419 to 38–420. There being no indication in the record of any waiver of the right to jury

trial, the issue of damages could not properly be decided by the court.

Accordingly, we remand for trial of the issue of the damages to which Patterson is entitled for his confinement in SHU. This does not, of course, preclude the parties' consensual resolution of the amount of the monetary award.

## CONCLUSION

For the foregoing reasons, we affirm the district court's decision granting Patterson partial summary judgment on the issue of liability, and we vacate the judgment and remand for trial of the issue of damages.

No costs.