Michael **McCONNELL**, Plaintiff,

v.

Donald **SELSKY**, Program Director, Inmate Discipline; John P. Keane, Superintendent, Sing Sing Correctional Facility; John Mahoney, Hearing Officer, Defendants.

Nos. 91 Civ. 6282 (RPP), 91 Civ. 3260 (RPP).

United States District Court, S.D. New York.

Feb. 1, 1994.

Scott L. Lessing, Deborah Gordon, New York City, for plaintiff Michael McConnell.

G. Oliver Koppell, Atty. Gen. of the State of N.Y. by Ronald Turbin, New York City, for defendants Donald Selsky, John P. Keane and John Mahoney.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Michael McConnell brought this action pursuant to 42 U.S.C. § 1983 charging that defendants denied him due process of law in the conduct of two Tier III disciplinary hearings at Sing Sing Correctional Facility in November 1990 and January 1991. Defendants and Plaintiff cross-move for summary judgment. For the reasons stated below, (1) Defendants' motions are granted and Plaintiff's motion is denied with respect to the November 1990 hearing, and (2) Plaintiff's motion for partial summary judgment is granted and defendant Mahoney's motion for summary judgment is denied in part and granted in part with respect to the January 1991 hearing.

## BACKGROUND

### A. The November 1990 Hearing

On November 15, 1990, Plaintiff Michael McConnell, then a prisoner at Sing Sing Correctional Facility, was served with two inmate misbehavior reports ("MR–1" and "MR–2"), charging him, respectively, with possession of a controlled substance and with possession of contraband fashioned into a weapon on November 14, 1990.

On November 19, 1990, defendant John Mahoney, a Hearing Officer at Sing Sing, commenced a Tier III disciplinary hearing to determine whether Plaintiff was guilty of the charges in MR–1 and MR–2 and, additionally, whether Plaintiff should be placed in involuntary protective custody as a result of his cell being set afire on November 14, 1990.[1] At the beginning of the hearing, Mahoney advised Plaintiff that he could call witnesses on his behalf and was required to make procedural objections on claims promptly so that Mahoney could consider them and, if possible, respond. Plaintiff acknowledged that he received a copies of MR–1 and MR–2 on November 15, 1990, and was provided inmate assistance with respect to both MRs on November 17, 1990. Plaintiff (1) agreed to protective custody, (2) pleaded not guilty but requested no witnesses with respect to the weapons charges in MR–2, and (3) pleaded not guilty to the charges in MR–1 and requested additional time to review the charges. Mahoney adjourned the hearing for two days, until November 21, 1990, to permit Plaintiff to prepare a defense, stating that because the hearing was required to be completed by November 27, 1990, and because the Thanksgiving holiday was approaching, it would be necessary to complete all three hearings on November 21st.

When the hearing was reconvened on November 21st, the evidence before defendant Mahoney on the charges in MR–1 included: (1) MR–1 itself, which was signed by Corrections Officer Hill, the officer who tested the contraband, but not Sergeant McNamara, the officer who allegedly found the drugs

---

1. Plaintiff does not assert any claims with respect to MR–2, which charged Plaintiff with possession of contraband fashioned into a weapon, or with respect to the recommendation to place him in involuntary protective custody.

during a frisk of Plaintiff; (2) a form entitled "Request for Test of Suspected Contraband Substance," reflecting that (a) Sergeant McNamara requested a test of the contraband he had found in McConnell's possession during a frisk and (b) that Corrections Officer Hill performed the test and concluded that the substance was heroin; and (3) a Contraband Receipt, attached to MR–1, showing the chain of custody of the contraband from McNamara to Hill to Corrections Officer J. Finn. No witnesses testified.

In his defense, Plaintiff made several arguments and requested that Mahoney call Corrections Officer Hill as a witness. Plaintiff argued that MR–1 should be dismissed as inconsistent with 8 NYCRR § 251–3.1 because it did not state when and where the drugs were found or specify the officer who found the contraband.[2] Plaintiff also argued that his due process rights were violated because McNamara, as the person who found the drugs, was required to make a written report and allegedly failed to do so. Defendant Mahoney explained to Plaintiff that McNamara was not required to write a misbehavior report because McNamara could not have known whether or not there was a violation until the substance had been tested and identified as contraband. Mahoney further pointed out, and Plaintiff acknowledged, that McNamara had signed the Contraband Receipt, which stated that McNamara found five paper packets "wrapped in disbursement form receipt in inmate McConnell's ID card holder after it had been removed from inmate's right shoe."

When Mahoney then asked Plaintiff why he wanted to call Hill, Plaintiff said he wanted to ask Hill "if he found a controlled substance in my possession and if not, why is he writing me up for possession of a controlled substance." Lessing Aff., Exh. 1 at 9. Mahoney denied Plaintiff's request, stating, "We already know he didn't find it on you. The report states that." *Id.* Plaintiff replied, "That's all I had." *Id.* Plaintiff did not present any evidence in his defense or ask to call Sergeant McNamara as a witness.

At the close of the hearing, defendant Mahoney found Plaintiff guilty of the charges in MR–1. McConnell appealed the determination to defendant Donald Selsky, Director of Special Housing/Inmate Disciplinary Program, who affirmed Mahoney's decision on January 29, 1991.

As a result of his conviction on the charges in MR–1, Plaintiff was assigned to 180 days in the Special Housing Unit ("SHU"), 180 days' loss of commissary, packages and phones, and six months' loss of good time.

## B. The January 1991 Hearing

On January 14, 1991, Plaintiff was served with another misbehavior report ("MR–3") charging him with written harassment. MR–3 alleged that, on January 12, 1991, Plaintiff passed a note to a nurse, D. Heady, R.N., while she was making medication rounds. The note requested that Heady give Plaintiff an address where he could write to her. The report charged that Plaintiff passed the note "in a secretive manner" and that the "note was amorous in content and harassing." MR–3 was prepared by Nurse Heady and endorsed by Corrections Officer Kerrigan, the officer to whom Heady had given the note.

At his request, Plaintiff was assigned an inmate assistant, Ms. F. Etkin, to assist with his preparation for the hearing on MR–3. Plaintiff requested that Etkin interview both Heady and Kerrigan and report back to him. However, Etkin did not interview either Heady or Kerrigan because each worked a different shift than Etkin.

At the hearing on MR–3 commenced on January 18, 1992, Plaintiff requested that Hearing Officer Mahoney adjourn the hearing and assign an assistant who would be able to interview Heady and Kerrigan for Plaintiff. McConnell answered the charges in MR–3 by stating that he had merely left a crumpled note on his cell gate and had asked

---

**2.** The now superseded § 251–3.1 in effect at the time of the hearing on MR–1 provided, in pertinent part:

The misbehavior report shall consist of a written specification of the particulars of the alleged incident of misbehavior involved, a reference to the inmate rule book number and a brief description of the date, time and place of such incident.

Nurse Heady to throw it away. He requested that Mahoney call Heady and Kerrigan to testify. Mahoney denied McConnell's request for a new assistant and then adjourned the hearing and, in the interim, took Nurse Heady's tape-recorded testimony outside Plaintiff's presence. Heady testified that Plaintiff had passed the note to her through the cell bars and that she did not recall Plaintiff asking her to throw the note in the garbage.

Although Plaintiff was not present when Heady testified, Mahoney played the entire testimony for Plaintiff on January 23, 1991, and gave him the opportunity to respond. After hearing Heady's testimony, Plaintiff renewed his request for Kerrigan's testimony and for assistance. Mahoney denied Plaintiff's request to call Kerrigan stating that, since Kerrigan endorsed the misbehavior report prepared by Heady, his testimony would not have differed from hers and would have been redundant. Mahoney also denied Plaintiff's request for further assistance.

At the close of the hearing, Mahoney found Plaintiff guilty of written harassment. Mahoney imposed a suspended sentence of 60 days in the SHU and warned that any further violations of the same nature could result in his near term release being delayed. Plaintiff did not appeal Mahoney's decision.

After a hearing on February 12, 1991, a parole board denied for twelve months Plaintiff's request for release. The board cited Plaintiff's "poor behavior" and noted that he had accrued six tickets, four of them for Tier III violations.

### C. Procedural History of the Case

Plaintiff filed his complaint in this action, pro se, on September 17, 1991. He filed a motion for leave to file an amended complaint on May 12, 1992, which unopposed motion was granted on May 29, 1992. The pro se amended complaint charges that the defendants violated his constitutional right to due process with respect to the hearing on MR–1 in several respects: (1) that MR–1 did not comply with DOCS regulations; (2) that defendant Mahoney denied Plaintiff's request to call Corrections Officer Hill, the author of MR–1, as a witness; (3) that there was insuf-

ficient evidence to support Mahoney's finding of guilt; (4) that Mahoney was not impartial; and (5) that defendant Selsky violated Plaintiff's due process rights by failing to correct on appeal the allegedly unconstitutional conviction on the charges in MR–1. The amended complaint also asserts several claims with respect to the January 1991 hearing on MR–3.

Plaintiff filed this motion for summary judgment, pro se, on September 10, 1992, and defendants cross-moved for summary judgment on October 30, 1992. Thereafter, Plaintiff secured pro bono counsel, and the Court accepted additional submissions by the parties.

With respect to the November 1990 hearing, Plaintiff opposes defendant Mahoney's motion for summary judgment only with respect to the claim that Mahoney denied Plaintiff's request to call Hill as a witness. Plaintiff moves for partial summary judgment on the issue of liability with respect to that claim. Plaintiff also opposes defendant Selsky's motion for summary judgment but does not move for summary judgment with respect to Selsky at this time.

With respect to the January 1991 hearing, Plaintiff opposes defendant Mahoney's summary judgment motion only with respect to Plaintiff's claims that: (1) Mahoney refused to permit Plaintiff's request to allow Officer Kerrigan, who signed MR–3, to testify, and (2) Mahoney denied Plaintiff assistance in preparing a defense to the charges in MR–3. With respect to those claims, Plaintiff moves for partial summary judgment on the issue of liability only.

Plaintiff does not oppose defendant John P. Keane's motion for summary judgment. Accordingly, that motion is granted.

### DISCUSSION

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence

122

of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## A. The November 1990 Hearing: Mahoney's Denial of Plaintiff's Request to Call Hill

■ Plaintiff opposes defendant Mahoney's motion for summary judgment with respect to Plaintiff's claim that Mahoney deprived him of due process by declining to call Corrections Officer Hill to testify in the hearing on MR–1, and moves for partial summary judgment on the issue of liability only. Because Mahoney reasonably determined that Hill's testimony was not necessary, Mahoney's motion is granted, and Plaintiff's motion is denied.

■ An inmate's right to due process includes the right to call witnesses to present relevant, material evidence at a disciplinary proceeding. *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). A hearing officer may refuse to call a witness for reasons "logically related to preventing undue hazards to 'institutional safety or correctional goals,'" *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985) (citation omitted), or because the proposed testimony is irrelevant or unnecessary. *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991). The hearing officer carries the ultimate burden of proving the rationality of his refusal to call a witness. *Id.* at 30–31.

At the beginning of his joint hearing on MR–1, MR–2, and the recommendation for involuntary protective custody, Mahoney told Plaintiff of his right to call witnesses. Plaintiff chose to request Hill as a witness but not McNamara. His purpose was clear. He wanted Hill to testify that he had not found the drugs in Plaintiff's possession. Thus his purpose was not to prove his lack of guilt, but to prove that MR–1 had been prepared by the wrong person, in alleged violation of regulations and Plaintiff's due process rights.

Mahoney understood plaintiff's argument and pointed out that McNamara could not fill out a misbehavior report because, until the substance he found was tested, he could not have known of any violation to report. After asking Plaintiff what testimony he desired to elicit and after Plaintiff answered that he wanted Hill to acknowledge that he had not found the contraband in Plaintiff's possession, Mahoney denied the request on the grounds that the documentary evidence already demonstrated what Plaintiff wished to show. To call Hill thus served no purpose.

■ Plaintiff's argument that Hill's testimony would have shown that MR–1 violated 8 NYCRR § 251–1.4(b) has little substance. That section provides that a misbehavior report

shall be made in writing by the employee who has observed the incident or who has ascertained the facts, and where more than one employee has personal knowledge of the facts, a report shall be made by each such employee or, where appropriate, each such employee shall endorse his name on a report made by one employee.

Although McNamara did not endorse MR–1 or issue a separate misbehavior report, he did fill out and sign a Contraband Receipt noting that five paper packets were "found wrapped in disbursement form receipt in inmate McConnell's ID card holder after it had been removed from inmate's right shoe" on November 14, 1990, at 9:20 p.m. By its terms, a copy of this form was to be attached to the misbehavior report. Furthermore, McNamara filled out a Request for Test of Suspected Contraband Drugs, which shows that the contraband was found during an admission frisk in HBC.

Thus MR–1 provided Plaintiff with notice of the when, what and where necessary for him to defend himself. Any failure of Corrections Officers Hill and Kerrigan to conform to a strict reading of § 251–1.4(b) does not rise to the level of a due process violation. To allow Plaintiff to claim that he was denied due process because he was forbidden to call a witness to state what the record already reflected regarding compliance with § 251–1.4(b) would be to exalt form over substance. Plaintiff's motion for partial sum-

mary judgment is denied. Defendant Mahoney's motion for summary judgment is granted. Since there was no due process violation by Mahoney, Defendant Selsky's motion for summary judgment is also granted.

## B. The January 1991 Hearing: Mahoney's Denial of Plaintiff's Requests to Call Kerrigan and for Assistance

■ Plaintiff opposes defendant Mahoney's motion for summary judgment and cross-moves for partial summary judgment on the issue of liability with respect to Plaintiff's claims that Mahoney violated his due process rights by denying Plaintiff's requests for a new inmate assistant and to take Kerrigan's testimony.

■ Inmates who are confined in the SHU, as was Plaintiff at the time MR–3 was served, are entitled to assistance in "marshaling evidence" and preparing a defense to disciplinary charges against them. *Eng v. Coughlin*, 858 F.2d 889, 897–98 (2d Cir.1988). "[S]uch help certainly should include gathering evidence ... and interviewing witnesses. At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." *Id.* at 898.

In *Fox v. Coughlin*, 893 F.2d 475 (2d Cir. 1990), the Second Circuit anticipated precisely the situation presented here. After an altercation with prison guards, an inmate was served with a misbehavior report signed by one officer and endorsed by three others. The inmate's assigned assistant failed to interview any of seven witnesses the inmate requested he interview, including the four officers who were present during the altercation. At the disciplinary hearing, the hearing officer interviewed five of the seven witnesses the inmate requested but refused to interview the two officers who endorsed the misbehavior report on the grounds that their testimony would be redundant.

While affirming the district court's granting of summary judgment for defendants on the basis of qualified immunity,[3] the court stated:

> Nonetheless, we write to emphasize that a failure to provide an inmate assistance in preparing a defense or interview an inmate's requested witnesses without assigning a valid reason may in the future provide a sufficient basis for a viable § 1983 action.

*Id.* at 478. The court specifically noted that "the hearing officer had no reason to believe that the testimony of the two officers would be redundant" because no prison official had interviewed the officers "to establish what their testimony would be." *Id.* The mere fact that the officers endorsed the misbehavior report provided an insufficient basis for concluding that their testimony would be redundant. *Id.* The court also noted that the unavailability of one of the excluded officers during the two days of the hearing provided no basis for refusing to interview him where the inmate posed no threat to institutional safety and six days remained in which to complete the hearing within the prescribed fourteen day period. *Id.*

*Fox* is determinative that the reasons Mahoney proffers to support his exclusion of Kerrigan's testimony are insufficient. First, Mahoney's finding that Kerrigan's testimony would be redundant had no basis other than the fact that Kerrigan endorsed MR–3. Second, absent any evidence that Plaintiff posed a threat to institutional safety, Mahoney's reference "institutional security and efficiency" as a reason to refuse to interview Kerrigan is insupportable. When Plaintiff first requested Kerrigan's testimony, eight days remained before the expiration of the statutory period on January 26, 1991. Thus, Mahoney has failed to present any reasonable basis for his refusal to interview Kerrigan or to appoint a new inmate assistant. Such refusal, accordingly, denied Plaintiff of his right to due process.

---

**3.** The disciplinary hearing at issue in *Fox* occurred in 1983, five years before the right to inmate assistance was "clearly established" by *Eng*, 858 F.2d 889. Since both the right to call material witnesses and the right to receive assistance were "clearly established" at the time of the hearing at issue here, the doctrine of qualified immunity does not apply. *See Eng*, 858 F.2d at 897; *Fox*, 893 F.2d at 478.

■ Defendant Mahoney argues that Plaintiff's action is barred because he failed to exhaust his state administrative remedies by failing to appeal the result of the January hearing on MR-3. However the Supreme Court has held that, except in certain statutorily prescribed instances not applicable here, exhaustion of administrative remedies is not a prerequisite to a section 1983 action.[4] *Patsy v. Board of Regents,* 457 U.S. 496, 508–12, 102 S.Ct. 2557, 2563–66, 73 L.Ed.2d 172 (1982).

■ Defendant Mahoney also maintains that, since he imposed a suspended sentence for the conviction on the charges in MR-3, no harm resulted from the due process violation. However, Plaintiff moves for partial summary judgment with respect to liability only, not damages. A person who is the victim of a due process violation, even one that causes no compensable deprivation of liberty, is entitled to at least nominal damages. *Patterson v. Coughlin,* 905 F.2d 564, 569 (2d Cir.1990) (citing *Carey v. Piphus,* 435 U.S. 247, 263, 266, 98 S.Ct. 1042, 1052, 1053, 55 L.Ed.2d 252 (1978)). Accordingly, Plaintiff is not required, on this motion, to prove any greater deprivation than the deprivation of his right to due process of law.

■ In any event, notwithstanding the suspended sentence, Plaintiff's exhibits indicate that the Parole Board adverted to four Tier III disciplinary violations in denying for one year Plaintiff's release on parole. Future testimony by Officer Kerrigan may well show that, had Kerrigan testified, Plaintiff would have been convicted on the charges in MR-3 and that, accordingly, any deprivation of liberty due to Plaintiff's conviction on MR-3 was not caused by the due process violation. *See Patterson,* 905 F.2d at 568 ("[E]ven where a denial of due process has been followed by a liberty deprivation, unless the deprivation was caused by the violation the plaintiff is limited to nominal damages."). Because there remains a genuine issue of fact with respect to whether the due process

violation caused any compensable liberty deprivation, defendant Mahoney is not entitled to partial summary judgment on the issue of damages.

Accordingly, defendant Mahoney's motion for summary judgment is denied with respect to Plaintiff's claim that Mahoney's witness denial and refusal to provide assistance violated Plaintiff's due process rights. Plaintiff's motion for partial summary judgment with respect to liability on that claim is granted.

## CONCLUSION

Plaintiff's motion for partial summary judgment on the issue of liability is granted with respect to his claim that defendant Mahoney denied him due process by denying Plaintiff assistance and refusing to call Kerrigan as a witness during the hearing on the charges on MR-3. Defendant Mahoney's cross-motion for summary judgment is denied with respect to that claim. In all other respects, Plaintiff's motion for summary judgment is denied and Mahoney's cross-motion for summary judgment is granted.

Defendant Keane's and defendant Selsky's cross-motions for summary judgment are also granted.

IT IS SO ORDERED.

an inmate's due process rights were not violated where an administrative appeal had cured any procedural defects. *Id.* at 1156.

---

4. Defendant Mahoney's reliance on *Young v. Hoffman,* 970 F.2d 1154 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993), is misplaced. That case held only that