**Henry BENITEZ, Plaintiff–Appellant,**

v.

**D. WOLFF, J. Kihl, Defendants– Appellees.**

**No. 107, Docket 92–2168.**

United States Court of Appeals, Second Circuit.

Submitted Sept. 16, 1992.

Decided Feb. 3, 1993.

---

Henry Benitez, pro se.

Robert Abrams, Atty. Gen., State of N.Y., Albany, NY, (Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Cynthia F. Kruesi, Asst. Attys. Gen., of counsel), for defendants-appellees.

Before OAKES, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

This case returns to us on an appeal challenging the dismissal of the complaint following our remand in *Benitez v. Wolff,* 907 F.2d 1293 (2d Cir.1990) (per curiam) (*"Benitez I"*). Plaintiff *pro se* Henry Benitez, a New York State prisoner, appeals from a final judgment of the United States District Court for the Western District of New York, Michael A. Telesca, *Chief Judge*, dismissing his complaint brought pursuant to 42 U.S.C. § 1983 (1988) against defendants Donald Wolff and Joseph Kihl for violation of his due process rights in connection with his preparation for a prison disciplinary hearing. The district court granted summary judgment in favor of defendants on the alternative grounds that (1) Benitez's rights were not violated, or (2) if they were violated, defendants were entitled to qualified immunity. On appeal, Benitez challenges both rulings. For the reasons below, we conclude that there was a due process violation, but we affirm on the ground that defendants were entitled to qualified immunity.

## I. BACKGROUND

In early 1988, Benitez was an inmate at the Attica Correctional Facility. The present action arises out of two misbehavior reports filed against him by correction officials at that institution. The material facts are not at issue, and the record, construed in Benitez's favor, reveals the following.

On February 27, 1988, Corrections Officer J. Prusak filed a four-page misbehavior report charging Benitez with violations of eight specified rules of conduct ("February 27 Report"). Benitez was served with this report at 9:32 a.m. on February 29. Later that day, Corrections Officer A. Witkowski filed a second misbehavior report against Benitez arising out of a different incident ("February 29 Report"). The February 29 Report consisted of one page and charged violations of four rules of conduct, two of which had also been invoked in connection with the incident that formed the basis for the February 27 Report. At about 2:30 p.m. on February 29, after the second re-

port had been filed, Wolff, a corrections lieutenant, took Benitez from his cell to the prison's Special Housing Unit ("SHU"), and refused to allow him to take along his copy of the February 27 Report. The February 29 Report was served on Benitez at 10:53 a.m. on March 1, 1988. At 1:30 p.m. that day, Benitez was moved from one SHU cell to another; he was not allowed to take with him his copy of the February 29 Report.

At about noon on March 2, 1988, Kihl, a hearing officer, commenced a disciplinary hearing on the 12 charges alleged in the two reports. At the outset of the hearing, Benitez filed a written objection to the proceedings. He complained that because he had been moved from one cell to another soon after he received each report and was not allowed to take his copy with him either time, he had been prevented "from obtaining or reviewing the contents of said written report[s] and unreasonably hampered [in] the preparation of defense 24–hours before the instant hearing." Kihl rejected Benitez's contentions, finding that the reports had been served on Benitez at least 24 hours before the hearing, and ruling that nothing more was required. Kihl permitted the hearing to proceed and found Benitez guilty on 11 of the 12 charges. As punishment, Benitez was placed in SHU for 180 days and had his telephone privileges and good-time credits revoked.

After unsuccessfully challenging the administrative ruling on appeal and in the state courts, Benitez initiated the present action pursuant to 42 U.S.C. § 1983 against Wolff and Kihl, contending that the procedures leading up to the disciplinary hearing violated his right to due process. The district court, construing Benitez's claim as alleging merely a failure to give 24 hours' notice, and finding it undisputed that at least 24 hours' notice had been given, dismissed the complaint *sua sponte*. In *Benitez I*, this Court interpreted the complaint as alleging instead that Benitez had a due process right to actual possession of the written charges for at least 24 hours before his disciplinary hearing and that defendants had deprived him of that right. Concluding that the complaint stated a col-

orable claim, we reversed and remanded for further proceedings. *See* 907 F.2d at 1294–95.

On remand, both sides moved for summary judgment. In a Decision and Order dated March 13, 1992 ("Decision"), the district court denied Benitez's motion and granted that of defendants. It held that there had been no due process violation, reasoning that Benitez had

> had ample time to review each report before he was moved, and does not dispute that his disciplinary hearing took place more than twenty-four hours after he was served with the reports. The fact that he may have failed to review the reports while they were in his possession is irrelevant, especially in light of the fact that it was the plaintiff himself who caused his initial transfer to the SHU. Moreover, as plaintiff admitted at the hearing, he was not unfamiliar with the violations alleged in the misbehavior reports. Thus, he was on notice of the charges and could have used the twenty-four hour period before the hearing (fifty hours with respect to the February 27th report) to "marshal the facts and prepare a defense."

Decision at 7–8 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974)). The court also ruled that if defendants had violated Benitez's right to due process, they were entitled to qualified immunity because the specific right infringed was not " 'clearly established' at the time of the alleged violation." Decision at 9.

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, Benitez challenges the district court's rulings that defendants did not violate his right to due process and that, in any event, they are entitled to qualified immunity. Though we agree that Benitez's right to due process was violated, we affirm on the ground that defendants have qualified immunity.

## A. *Due Process*

When an inmate is charged with a rules violation that could lead to the loss of good-time credits or to confinement in SHU, at least the "minimum requirements of procedural due process appropriate for the circumstances must be observed." *Wolff v. McDonnell*, 418 U.S. at 558, 94 S.Ct. at 2976 (good-time credits); *see McCann v. Coughlin*, 698 F.2d 112, 121 (2d Cir.1983) (confinement in SHU); *Crooks v. Warne*, 516 F.2d 837, 839 (2d Cir.1975) (same). These principles require, *inter alia*, that the inmate be given advance notice of the charges against him. The notice requirement is no mere formality. Rather it

> has many salutary effects. It compels the charging officer to be more specific as to the misconduct with which the inmate is charged; it serves to narrow the inquiry at the hearing to the misconduct alleged; it informs the inmate of what he allegedly has done so that he can prepare a defense, if he chooses, to the specific charges set forth, based on whatever evidence he can muster, given the limited time available and the lack of an opportunity to interview or call witnesses; and it aids the fact finder to reach an informed decision.... The notice requirement also assures a degree of fairness in the proceedings so that an inmate is not summarily brought before a ... panel and required on the spot to explain vague charges set forth in a misbehavior report which he has never seen.

*McKinnon v. Patterson*, 568 F.2d 930, 940 n. 11 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

Further, a recitation of the charges orally does not suffice. The notice must be "written ... in order to inform [the inmate] of the charges and to enable him to marshal the facts and prepare a defense." *Wolff v. McDonnell*, 418 U.S. at 564, 94 S.Ct. at 2979. Finally, *Wolff v. McDonnell* held that due process also requires that the inmate be given at least a brief period of time after receiving the written notice, no less than 24 hours, to permit him to prepare for the disciplinary hearing. *See* 418 U.S. at 564, 94 S.Ct. at 2978; *see also* 7 N.Y.C.R.R. § 254.6(a).

Although *Wolff v. McDonnell* did not state expressly that the inmate must be allowed to retain for 24 hours the written notice given him, we think this requirement is fairly inferred from the requirements that there be advance notice, that it be in writing, and that it be given to the inmate at least 24 hours in advance. All of these requirements are designed to assure the inmate a fair chance to prepare his defenses against the charges. Especially when there are a large number of charges or the charges are complicated, that fair chance is denied if the written charges are quickly taken away from the inmate and he is forced to prepare his defenses based largely on his memory of the factual details alleged and regulatory provisions invoked.

The present case is illustrative. Benitez was first presented with a four-page statement detailing eight separate charges; he was allowed to have this notice before him for only some five hours; if he wished to use the remainder of his 24-hour period to prepare, he had to rely on his memory for the substance of each of the eight regulatory provisions he was alleged to have violated. He was shortly presented with four additional charges arising out of different conduct alleged to have occurred on a different date, in a different place, involving a different complainant, and alleged to have violated four regulatory provisions; he was allowed to retain the written notice of these new charges for only some two hours. Thus, faced with a total of 12 charges against him, invoking 10 different regulations, Benitez was permitted to have the written notices before him for an average of about a half-hour per charge. Thereafter, in preparing his defenses, he was forced to rely on his memory for the specifics of the 12 charges.

We cannot conclude that this treatment satisfied the minimum requirements of due process. Accordingly, we disagree with the district court's ruling that defendants' actions in the present case did not violate Benitez's constitutional rights.

### B. *Qualified Immunity*

] The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights, *see Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). The official does not have such immunity where the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039; *see, e.g., Bass v. Coughlin,* 976 F.2d 98, 99 (2d Cir.1992) (per curiam); *Vasbinder v. Ambach,* 926 F.2d 1333, 1341 (2d Cir.1991). To determine whether a particular right was clearly established at the time defendants acted, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

 Though the present case presents a close question, we conclude that the district court correctly ruled that defendants were entitled to qualified immunity. The discussion in Part II.A. above demonstrates that it was clearly established well prior to the events at issue here that an inmate charged with violating disciplinary rules and facing possible loss of good time credits or transfer to SHU was entitled to written notice of the charges and that he be given that notice at least 24 hours before any hearing.

Yet no court, so far as we are aware, had ruled that these requirements meant that after serving the advance written notice, prison officials were required to allow the inmate to retain the written notice for 24 hours. Though, as discussed above, we think that is the fair implication of *Wolff v. McDonnell,* and we have clarified the existence of the 24–hour retention requirement today, we cannot say that in March 1988 an inmate's right to retain the notice for 24 hours had been defined with sufficient specificity to deny defendants qualified immunity for the acts complained of here.

Accordingly, we uphold the district court's ruling that defendants were entitled to summary judgment dismissing the complaint on the ground of qualified immunity.

### CONCLUSION

For the foregoing reasons, the judgment dismissing the complaint is affirmed.