Christopher McCORMACK, Plaintiff,

v.

Gerald CHEERS and Donald Selsky, Defendants.

No. 90 Civ. 7430(RJW).

United States District Court, S.D. New York.

April 1, 1993.

---

Daniel H. Weiner, Hughes Hubbard & Reed, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, Clement J. Colucci, Asst. Atty. Gen., for defendants.

## OPINION

ROBERT J. WARD, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff Christopher McCormack ("McCormack") has filed timely objections to the Report and Recommendation of Magistrate Judge Sharon E. Grubin dated September 25, 1992 (the "Report"). The Report recommends that plaintiff's motion for summary judgment in his 42 U.S.C. § 1983 action be denied and defendants' motion for summary judgment be granted.[1] After reviewing *de novo* those portions of the Report to which McCormack objects, the Court rejects in part and accepts in part the magistrate judge's recommendations. Defendants' motion is denied with respect to Counts I, II, III and IV, and denied in part and granted in part with respect to Counts V and VI. Count VII is dismissed without prejudice to renew.

## BACKGROUND

On March 13, 1988, two corrections officers at the Green Haven Correctional Facility ("Green Haven") detected a "strong oder [sic] of what appeared to be marijuana" ema-

nating from the cell of inmate Christopher McCormack. Colucci Aff. Ex. B. The officers requested that a drug test be performed on McCormack and on March 14 plaintiff provided them with a urine sample. Two separate enzyme multiple immunoassay technique ("EMIT") tests were then administered.[2] The first test was performed on April 24 by Correction Officer Julio Soto ("Soto"). The second was performed on May 14 by Correction Officer H. Rosario ("Rosario"). Both tests produced positive results for marijuana use. *Id.* Ex. C.

On May 14, 1988 McCormack was served with an Inmate Misbehavior Report (the "Misbehavior Report") charging him with use of a controlled substance. *Id.* Ex. A. The next day, defendant Lieutenant Gerald Cheers ("Cheers") was assigned to conduct a Tier III disciplinary hearing. *Id.* Ex. D. The hearing was convened on May 18.[3]

At or before the hearing, McCormack received a copy of the Misbehavior Report. In addition, he received copies of his urinalysis test forms, including the Request for Urinalysis Test form (the "Urinalysis Request form"); the Urinalysis Procedure form; and EMIT Test Result Cards for each test (the "Result Cards"). *Id.* Ex. F at 1. He also received redacted versions of Soto and Rosario's Daily Worksheets for the two test days (the "Worksheets"). *Id.* Ex. F at 7.[4]

At the hearing, McCormack argued that the urine sample's chain of custody had been defective and that the test results were unreliable. *Id.* Ex. F at 7–8. McCormack ques-

---

1. McCormack was *pro se* when he filed his cross-motion for summary judgment. He is now represented by counsel and has withdrawn his cross-motion for summary judgment. Memorandum in Support of Plaintiff's Objections to Report and Recommendation of United States Magistrate Judge at 1.

2. The EMIT test measures the reaction of an enzyme to a specified drug. It operates biochemically in that antibodies are added to the urine specimen and the resulting substance is compared to known values on a photometer. The photometer then prints out on a result card either a positive or negative result for the sample. If the EMIT result is negative, no further action is necessary. On the other hand, if the result is positive, a second test is performed and

then if the second test is also positive, a misbehavior report is prepared. *Lahey v. Kelly,* 71 N.Y.2d 135, 524 N.Y.S.2d 30, 32, 518 N.E.2d 924, 926 (1987).

3. The transcript of the hearing, the Superintendent's Hearing Disposition Rendered form, the Correctional Facility Hearing Record Sheet, and the Review of Superintendent's Hearing form all differ as to whether the hearing was held on May 18 or May 24 or on both days. Apparently, the hearing was commenced on May 18.

4. Although Cheers never verified for the hearing record that McCormack received the Worksheets, it is clear that redacted versions of the Worksheets were in plaintiff's possession at the hearing. *Id.* Ex. F at 8–9.

tioned Soto, the only witness at the hearing, about crossed out and incorrect information on the Urinalysis Request form. McCormack apparently believed that another person had handled the urine sample prior to Soto because the handwriting sample Soto submitted at the hearing did not appear to match some of the handwriting on the form. *Id.* Ex. F at 10–13. McCormack twice requested that a Captain McGinnis ("McGinnis") be called to testify as to signatures in a logbook establishing the urine sample's chain of custody. *Id.* Ex. F at 2, 5. Cheers did not call McGinnis although the request was never specifically denied. When McCormack requested to see the logbook, Cheers responded "[w]e don't give inmates a log" but "[w]e can give you a copy." *Id.* Ex. F at 3. Cheers never gave McCormack the entire logbook but Soto and Rosario's Worksheets, already received by McCormack, were the only relevant log entries. Cheers Aff. ¶ 16.

Presumably, plaintiff also sought to prove that prescription medication he was taking could have affected the test results. To this end, he requested that a Dr. Pedersen ("Pedersen") be allowed to testify and produce plaintiff's medical records. Colucci Aff. Ex. F at 4. At the end of the hearing, Cheers denied the request for Pedersen's testimony. *Id.* Ex. F at 15. In addition, Cheers stated the reasons for this denial in a written statement pursuant to N.Y.Comp.Codes R. & Regs. tit. vii § 253.5(a). He documented in the Superintendent's & Disciplinary Hearings–Witness Interview form (the "Witness Interview form") that Pedersen's testimony would not have altered the outcome of the hearing, since Syva, the company which produces EMIT tests, had already described the effects of medication on urinalysis tests in a previous letter it had sent to Cheers (the "Syva letter").[5] Cheers provided no explanation as to why plaintiff's medical records were not produced.

At the conclusion of the hearing, Cheers found McCormack guilty and ordered plaintiff confined to his cell or to the Special Housing Unit for 60 days. *Id.* Ex. F at 16. Plaintiff also lost telephone, commissary and package privileges during that 60 day period. *Id.* In a written decision following the hearing contained in the Superintendent's Hearing Disposition Rendered form (the "Disposition Report"), Cheers listed three factors as "evidence relied upon" in determining McCormack's guilt:

(1) C.O. J. Soto verified dates on Chain of Custody that test was conducted on 4–24–88 @ 13:50 pm [;] dates of 6–22–88 refer to positive control exp. Date [and] negative control exp. Date ...

(2) Strong odor of marijuana em[a]nating from inmate's cell while inmate was present in cell

(3) Inmate tested positive for marijuana via facility urinalysis procedure.

*Id.* Ex. J. McCormack appealed Cheers's determination to defendant Donald Selsky ("Selsky"), Director of the New York State Department of Correctional Services ("DOCS") Special Housing/Inmate Disciplinary Program. Selsky affirmed the guilty determination on July 25, 1988. *Id.* Ex. K.[6]

Subsequent to Selsky's affirmance, on August 26, 1988, McCormack brought an Article 78 proceeding in the New York State Supreme Court, Dutchess County, which was transferred to Clinton County on October 28, 1988. On March 7, 1989, the Supreme Court annulled the guilty determination, and ordered that all references to the proceedings be expunged from McCormack's files. *Id.* Ex. L. The court found that: (1) plaintiff was denied the required documentary evidence; (2) plaintiff was denied the right to call witnesses; and (3) questions regarding the urine specimen's chain of custody pre-

---

5. The Witness Interview form reads in full: "The appearance of Dr. Pederson could bear no weight in relation to the hearing. The memo from Syva is sufficient in reference to any medical info[rmation] pertaining to medication." Colucci Aff. Ex. H.

6. In a Review of Superintendent's Hearing form dated July 26, 1988 Selsky wrote to McCormack: "On behalf of the commissioner, please be advised that the Superintendent's Hearing disposition of May 24, 1988 has been reviewed and was affirmed by the Departmental Review Board on July 25, 1988." Colucci Aff. Ex. K.

cluded a finding of guilt. *Id.*[7] The decision was not appealed.

In the present action, McCormack alleges that defendants violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution in connection with the Tier III disciplinary hearing at Green Haven. His complaint asserts seven counts based on the denial of his liberty interest. Counts I, III and V are brought against Cheers. They allege respectively that: Cheers used defective documents as a basis for the hearing determination; Cheers withheld documentation from McCormack necessary for presenting a defense; and Cheers refused to hear from witnesses that McCormack had a right to call at the hearing. In Counts II, IV and VI, McCormack claims that Selsky failed to "remedy the wrong" upon learning on appeal of the particular due process violation alleged in the previous count. Count VII asserts that damages were suffered by plaintiff as a result of the denial of his due process rights. Pursuant to 42 U.S.C. § 1983, plaintiff seeks $25,000 in compensatory damages, $10,000 in punitive damages from Cheers, $5,000 in punitive damages from Selsky, and attorney's fees.

*The Magistrate Judge's Report*

In her Report, Magistrate Judge Grubin recommends that plaintiff's motion for summary judgment be denied and defendants' motion for summary judgment be granted with respect to all seven counts. Report at 1. Magistrate Judge Grubin first clarifies that the Article 78 proceeding does not control the present action and would not compel summary judgment for plaintiff. The state court proceedings referred exclusively to violations of state regulations and "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." Report at 13 (quoting *Russell*

*v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir. 1990)). Moreover, even had the state decision been based on federal constitutional determinations, plaintiff would not be able to rely offensively on the state court judgment for purposes of collateral estoppel in a federal action. *Id.* at 13 (citing *Gutierrez v. Coughlin,* 841 F.2d 484, 486 (2d Cir.1988) (per curiam)).

Next, Magistrate Judge Grubin recommends summary judgment for defendants on both Counts III and V in that neither raises genuine issues of material fact. Report at 16. Even though the Supreme Court held, in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that an inmate may call witnesses and present evidence in his defense at a prison disciplinary hearing, it also held that a hearing officer has discretion to deny the request "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." Report at 14 (quoting *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979). Magistrate Judge Grubin accepts Cheers's contention that McGinnis had nothing to do with the drug testing or the chain of custody and that his testimony would therefore be irrelevant. Magistrate Judge Grubin also notes that plaintiff offered no explanation nor in any way indicated the purported relevance of McGinnis's testimony. Report at 15. The Report discounts the need for Pedersen's testimony and copies of McCormack's medical records because "plaintiff ha[d] produced no evidence to rebut the evidence from Syva produced by Cheers that no known medication would have been found to produce such [false positive] results." Report at 15. According to the Report, case law has determined the near perfect reliability of double EMIT testing.

"We now find that, with a 98+% rate of accuracy, the double EMIT testing as performed by DOCS is sufficiently reliable so

---

7. The Article 78 decision and order found defendants in violation of N.Y.Comp.Codes R. & Regs. tit. vii §§ 254.6(c), 254.5, with respect to not furnishing plaintiff documentary evidence and not allowing plaintiff to call witnesses. It stated with reference to the chain of custody problems:
    The chain of custody simply does not make sense: names and dates have been changed, and the dates actually inserted in the chain of

custody are not sequential as they should be. The testing officer, Soto, attempted to explain some of the incorrect dates by stating that they were entered in error. However, since the chain of custody must be established to support the finding of guilt, the erroneous entries support the rejection of the test as evidence of guilt.
Colucci Aff. Ex. L at 2–4.

that the use of the results as evidence, even as the only evidence, in a disciplinary hearing does not offend due process."

*Id.* at 15 n. 8 (quoting *Peranzo v. Coughlin,* 675 F.Supp. 102, 105 (S.D.N.Y.1987), *aff'd,* 850 F.2d 125 (2d Cir.1988)). Magistrate Judge Grubin also accepts Cheers's contention that the term "logbook" refers to Soto and Rosario's Worksheets and McCormack received copies of these Worksheets along with all documents pertaining to his test procedures. Report at 16.

Finally, Magistrate Judge Grubin examines whether plaintiff's Count I challenge relating to the integrity of a urine sample's chain of custody based on defective documents amounts to a due process violation. " '[M]inimum due process require[s] a prison disciplinary body to establish a reasonably reliable chain of custody as a foundation for introducing the results of urinalysis tests.' " *Id.* at 17 (quoting *Soto v. Lord,* 693 F.Supp. 8, 19 (S.D.N.Y.1988)). The Report, however, distinguishes *Soto* from the present case. According to Magistrate Judge Grubin, the facts in *Soto* "presented an extreme instance of 'glaring deficiencies in the documentation.' " Report at 17 (quoting *Soto v. Lord,* 693 F.Supp. at 18). As the Report explains, *Soto* would not classify the present case as one where the documents contained "glaring deficiencies" because the instant action is similar to "a case where there are some 'possible discrepancies as to the time[ ] the specimen was removed from the refrigerator and the time[ ] the test[ ] w[as] performed.' " Report at 18 (quoting *Soto v. Lord,* 693 F.Supp. at 19 (quoting *Price v. Coughlin,* 116 A.D.2d 898, 498 N.Y.S.2d 209, 210 (1986))). Moreover, other evidence, such as the testimony of correction officers and the introduction of contemporaneous documents, can serve to explain discrepancies in the chain of custody. Report at 19 (citing *Tal v. McGann,* No. 88 Civ. 7678, 1991 U.S. Dist. Lexis 8129 at **6–7, 1991 WL 113776 at *2 (S.D.N.Y. June 14, 1991)).

Magistrate Judge Grubin reasons that, even though there were crossed out and incorrect dates on the Urinalysis Request form, Officer Soto's explanation for the discrepancies was not challenged by the plaintiff

as unreasonable, and contemporaneous documents, such as Soto's Worksheet and Result Card, confirm his testimony. Report at 18, 19. Therefore, the Report asserts that Cheers had a "sufficiently reliable basis" for concluding that the test results were adequately explained and concludes that "those results easily constitute 'some evidence' in support of his guilty finding...." *Id.* at 20 (citing *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) (court should sustain a hearing officer's determination in a disciplinary proceeding, as long as there is "some evidence" or a "modicum of evidence" in the record supporting the determination)). Magistrate Judge Grubin recommends that defendants' motion for summary judgment on Count I be granted. Report at 20.

Because Magistrate Judge Grubin recommends summary judgment for defendants on Counts I, III, and V, she also recommends summary judgment on Counts II, IV and VI. Selsky could not have affirmed a decision that denied McCormack's due process rights if no due process rights were violated to begin with. *Id.* As to the final count, Count VII, the Report concludes that since it deals solely with damages, it does not state a cause of action and should therefore be dismissed. Report at 2 n. 1.

*Plaintiff's Objections*

Plaintiff first objects to the Report's conclusion that no genuine issue of material fact exists with respect to Cheers's claim that testimony by Pedersen and McGinnis at the hearing would have been irrelevant. Memorandum in Support of Plaintiff's Objections to Report and Recommendation of United States Magistrate Judge ("Plaintiff's Objections") at 9–10. According to plaintiff, production of the medical records as well as Pedersen's testimony regarding the prescription medication in plaintiff's system were directly relevant to the charge of drug use, because expert medical knowledge, DOCS regulations and case law all recognize that "the danger of 'false positives' as a result of prescription medication is not insignificant." *Id.* at 11. In particular, plaintiff relies on the affidavit of Dr. John P. Morgan who asserts

that Motrin, a medication McCormack was taking at the time of the urinalysis tests, has been identified as a potential source of incorrect EMIT test results. Morgan Aff. ¶¶ 10–12.[8] As to McGinnis, plaintiff notes that, at the hearing, Cheers proffered no reason at all for refusing to call him. Plaintiff's Objections at 12.

McCormack next objects to Cheers's failure to inform him of the Syva letter prior to or during the hearing. Plaintiff argues that by relying on a document outside the record of the hearing, Cheers denied McCormack the right to notice and review of the available evidence against him. *Id.* at 13.

Plaintiff bases his third objection on his contention that the right to a fair and impartial hearing officer is fundamental. *Id.* at 14. He asserts that this right was violated when Cheers demonstrated his bias and partiality against plaintiff. Cheers refused to allow the testimony of Pedersen and McGinnis; he denied McCormack the right to place his medical records into the evidentiary record of the hearing; and he relied on documentary evidence that McCormack never saw and did not even learn of until it was too late to produce a defense. *Id.* In short, plaintiff maintains that these evidentiary deficiencies, in addition to Cheers's overall hostile and aggressive manner in conducting the disciplinary hearing, raise issues of fact regarding the hearing officer's predisposition to find the inmate guilty. *Id.*

Finally, in a fourth objection, McCormack argues that the issue of Selsky's liability for Cheers's due process violations also remains in dispute. According to plaintiff, a supervisor may be deemed responsible for the constitutional violations of a subordinate if he learned of those violations through an appeal and failed to remedy the wrong. *Id.* at 14–15 (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986)).

*Defendants' Response*

In response to plaintiff's first objection that he was improperly denied the testimony of McGinnis and Pedersen, defendants respond that McCormack never told Cheers nor Magistrate Judge Grubin why he needed these witnesses and what their testimony would prove. Memorandum in Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Defendants' Response") at 3–4. Moreover, they claim plaintiff ignores the undisputed evidence that Cheers thought, perhaps mistakenly, that McCormack had withdrawn his request for McGinnis's testimony. Likewise, defendants argue, plaintiff never explicitly stated why he wanted the medical records and Cheers could only infer that plaintiff wanted to prove medication was responsible for producing false positive results. *Id.* at 4 (citing Cheers Aff. ¶ 13). Defendants conclude, however, that the medical records were redundant and properly excludable, because the Urinalysis Request form, which was included in the hearing record, contained evidence that plaintiff had recently taken Motrin and Coricidin. Defendants' Response at 4–5.

Countering plaintiff's second objection that Cheers relied on the Syva letter, a document outside the hearing record, as evidence against McCormack, defendants assert that the claim is based on an incorrect factual premise. *Id.* at 5. According to defendants, Cheers, who specifically listed three other factors as evidence relied upon in the Disposition Report, only referred to the Syva letter in the Witness Interview form explaining why he denied the request for Pedersen's testimony. *Id.* In addition, defendants continue, because the Syva letter had been sent to Cheers on December 15, 1987, almost five months before McCormack's alleged smoking of marijuana and more than five months prior to the hearing, the letter should not be viewed as evidence but as the source of Cheers's pre-existing knowledge and beliefs about the reliability of the double EMIT testing procedure. *Id.* at 5–6. Defendants thus contend that the Syva letter was "background knowledge" which bore only on the question of whether evidence was irrelevant

---

8. John P. Morgan is Medical Professor and Director of the Pharmacology Program at the City University of New York Medical School. He is also Associate Professor of Medicine and Adjunct Professor of Pharmacology at the Mount Sinai School of Medicine in New York City. Morgan Aff. ¶ 2.

and as a preliminary question, even in a court of law under Fed.R.Evid. 104(a), would not be subject to the rules of evidence. *Id.* at 6. Defendants argue that, in light of case law's support for the reliability of EMIT tests, a court would be justified in treating the Syva letter as subject to judicial notice. *Id.* at 6 n. 3. Moreover, even had Cheers provided McCormack with the Syva letter, defendants maintain that plaintiff could have done nothing but allege, without the right to counsel, cross-examination or expert testimony, that he was right and the Syva company was wrong with respect to whether Motrin and Coricidin could cause false positive readings for marijuana. *Id.* at 7. In defendants' view, Cheers cannot be held to have violated due process for "empty formalisms" that amount only to an "exercise in futility." *Id.*

Cheers also should not be held to have violated due process, defendants contend, based on the affidavit testimony of Dr. Morgan. Defendants argue that the Court cannot consider Dr. Morgan's testimony, because it is only now being submitted as evidence and was not available to Cheers or to Magistrate Judge Grubin. *Id.* Yet, even if the Court were to consider Dr. Morgan's affidavit, defendants maintain that it cannot provide a basis to reject the Report since it is merely an attempt to relitigate *Peranzo v. Coughlin,* 675 F.Supp. 102 (S.D.N.Y.1987), *aff'd,* 850 F.2d 125 (2d Cir.1988). Defendants' Response at 7.

Defendants also request that the Court reject McCormack's third objection that Cheers was a biased hearing officer who was overly hostile and aggressive in conducting the disciplinary proceedings. Defendants argue that plaintiff, when appearing *pro se* and making his case, never raised this issue. They contend that plaintiff's counsel cannot at this stage alter issues of fact by changing his client's story. *Id.* at 10.

Finally, defendants assert that even if plaintiff's objections are meritorious and they have in any way violated plaintiff's due process rights, summary judgment is still warranted on account of qualified immunity. According to defendants, a reasonable person would have believed that Cheers and Selsky did not violate McCormack's clearly established constitutional rights and thus, as government officials, both defendants are entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

## DISCUSSION

■ 28 U.S.C. § 636(b)(1) affords a district court broad latitude in considering a magistrate judge's recommendations. When timely objection has been made to a magistrate judge's report, the district judge must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court judge may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." *Id.* A district court's obligation to make a *de novo* determination of properly contested portions of a magistrate judge's report does not require that the judge conduct a *de novo* hearing on the matter. *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir. 1989). It is sufficient that the district court "arrive at its own, independent conclusion about those portions of the magistrate[ ] [judge's] report to which objection is made...." *Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir.1983). Because a *de novo* determination warrants sound judicial discretion, "[e]ven if neither party objects to the magistrate[ ] [judge's] recommendation, the district court is not bound by the recommendation of the magistrate [judge]." *Grassia v. Scully,* 892 F.2d at 19. Similarly, when reviewing a magistrate judge's report, the district judge is not confined to the evidence presented to the magistrate judge but "[t]he [district] judge may receive further evidence." 28 U.S.C. § 636(b)(1).

Summary judgment may be granted when the moving party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Rosen v. Thornburgh,* 928 F.2d 528,

532 (2d Cir.1991). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir.1991). "More important ... summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510; *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir.1989). Summary judgment is particularly useful, however, in isolating and disposing of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. at 323–23, 106 S.Ct. at 2552.

■■■ The party moving for summary judgment bears the burden of demonstrating the basis for its motion and of identifying the documents and materials necessary to show the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552. A nonmovant may then attempt a rebuttal but he must demonstrate more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). All ambiguities are to be resolved in favor of the non-moving party. *Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir.1990). The Judge's function is not to resolve disputed issues of fact or determine the truth of the matter but to assess whether there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510.

This Court will now conduct a *de novo* review of each of plaintiff's objections by examining whether the standards for due process at a prison disciplinary hearing and the standards for qualified immunity support granting summary judgment in favor of defendants on each of the seven counts.

## A. Due Process

■■■ In the context of a prison disciplinary hearing, inmates retain rights under the Due Process Clause of the Fourteenth Amendment, but "the full panoply of rights due a defendant" in a criminal prosecution does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir.1992). Because "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application," *Wolff* adopted a balancing test for examining the reach of due process in the prison environment. *Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2974. While "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," prison officials are afforded "discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority...." *Id.* at 566, 94 S.Ct. at 2979. More specifically, prison officials may exclude testimony and other evidence "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.*

■■■ Although great deference is extended to prison officials in promoting institutional safety, the Supreme Court requires a "modicum of evidence to support a decision" which may infringe on a prisoner's protected liberty interests so as "to prevent arbitrary deprivations...." *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). However, this determination does not require assessment of the credibility of witnesses or weighing of the evidence. All a court must do is decide "whether there is any evidence that could support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. at 2774.

### 1. *Pedersen and McGinnis's Testimony*

■ Cheers's refusal to call Pedersen as a witness at the Tier III hearing as well as his refusal to admit plaintiff's medical records into evidence were not due process violations because the hearing transcript and Urinalysis Request form supplied the modicum of evidence necessary for validation of Cheers's decision. The information regarding McCormack's ingestion of drugs was already in the record and, therefore, Cheers's refusal was justifiable on the grounds of lack of necessity. Cheers reminded McCormack at the hearing that "[a]nything that is in this folder is a matter of record," and plaintiff admitted that he had received a copy of the Urinalysis Request form contained in that folder. Colucci Aff. Ex. F at 10, 1. There was a question on the form asking if plaintiff had recently taken any medication. Plaintiff answered in the affirmative and the medication was specifically identified as "Motron [sic] Coricidan". *Id.* Ex. B. Thus, there is enough evidence in the record to support Cheers's denial of McCormack's requests and defendants' summary judgment motion should be granted with respect to Cheers's failure to call Pedersen as a witness.

■ However, there is not enough evidence in the record to support Cheers's exclusion of McGinnis's testimony, and this Court determines that there is a genuine issue of material fact regarding Cheers's alleged violation of McCormack's due process rights based on this failure. It is Cheers who has the burden of proving that his refusal to call requested witnesses was for irrelevance, redundancy, or special hazards present in this case. *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985); *Scott v. Kelly,* 962 F.2d 145, 146–47 (2d Cir.1992). The Supreme Court has determined that even though constitutional challenges to disciplinary hearings are rarely successful, the burden of proof should not be placed on the inmate to show why the prison official's refusal to call witnesses was arbitrary or capricious. *Ponte v. Real,* 471 U.S.

at 499, 105 S.Ct. at 2197. Cheers mentioned no reason for his refusal to call McGinnis at the hearing, nor did he prepare a Witness Interview form explaining why McCormack's repeated requests were denied. Moreover, Cheers did not adequately justify his refusal in his post-hearing affidavit.

■ McGinnis's possible testimony as to crossed out and stylistically different signatures on the chain of custody section of the Urinalysis Request form is relevant because "minimum due process require[s] a prison disciplinary body to establish a reasonably reliable chain of custody as a foundation for introducing the results of urinalysis tests ..." into evidence at prison disciplinary hearings. *Soto v. Lord,* 693 F.Supp. 8, 19 (S.D.N.Y.1988). For Cheers to comply with this requirement, he would have to demonstrate that there was no break in the chain of people handling McCormack's urine sample.

> The chain of custody requirement, commonly found in contraband cases and litigation in which scientific analysis is relevant, mandates a continuous, physical nexus between the source of the substance in issue, the testing or analytical process to which the substance is subjected, and the proponent of the substance as real evidence.

*Id.* at 17 n. 20. McGinnis's testimony on this issue is not redundant because no other testimony was produced rebutting Soto's explanation of discrepancies in the Urinalysis Request form. Cheers never claimed that reasons of institutional efficiency led to his refusal.[9] Therefore, none of the reasons for denying an inmate the right to requested witnesses at a disciplinary hearing that were held to be valid by the Supreme Court in *Wolff v. McDonnell* were available to Cheers.

Although Cheers failed to explain adequately in the hearing record why he refused to let McGinnis testify, under *Ponte,* he still had the opportunity to explain why his action did not deprive the inmate of due process

---

9. Cheers did say that McGinnis was unavailable at the hearing. Colucci Aff. Ex. F at 14. However, unavailability of a witness at a particular time is not a sufficient reason for denying an inmate the right to that witness's testimony. *Fox v.*

*Coughlin,* 893 F.2d 475, 478 (2d Cir.1990) ("The other proffered reason—the unavailability [of the witness] ... is equally irrelevant. There was no time constraint upon the hearing's completion....").

subsequent to the hearing. "[P]rison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.'" *Ponte v. Real,* 471 U.S. at 497, 105 S.Ct. at 2196. However, Cheers's post-hearing affidavit explaining his decision certainly does not contain undisputed facts as defendants claim. Cheers Aff. ¶¶ 9–12. Cheers's affidavit is internally inconsistent. Defendants' contention that Cheers believed McCormack withdrew his request to call McGinnis is not supported by any testimony. The Correctional Facility Hearing Record Sheet completed by Cheers states that McCormack "waived on record" the right to have McGinnis testify. Colucci Aff. Ex. J. In his affidavit, however, Cheers admits that the transcript of the hearing does not contain McCormack's waiver. Cheers Aff. ¶ 9. Furthermore, McCormack should not be considered to have waived his right to call McGinnis simply because he did not make a fourth request. Cheers admits that McCormack made the request to call McGinnis at three points during the hearing. *Id.* ¶¶ 9–11.

McCormack's failure to ask for McGinnis for a fourth time parallels the failure of the inmate in *McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983), to ask whether he could request a witness at all. In *McCann,* the inmates at Fishkill Correctional Center had never before been allowed to call witnesses at a disciplinary hearing, yet the Adjustment Committee considered McCann's failure to request a witness as a waiver of his right. The Second Circuit held that the inmate could not be considered to "have waived his right by not asking to bring a witness" when "[h]e reasonably believed, and indeed it is clear, that his request would have been refused." *Id.* at 123. After three unsuccessful tries, McCormack could reasonably have believed that a fourth request to call McGinnis would have been ignored.

As for defendants' claim that plaintiff offered no reason why he wanted to call McGinnis as a witness or what the testimony might have proved, the hearing record itself contradicts this assertion. In requesting McGinnis as a witness, McCormack explained that the testimony would help demonstrate alleged errors in the log used to establish the urine sample's chain of custody. Colucci Aff. Ex. F at 2.

Indeed, this Court finds that a genuine issue of material fact exists with regard to whether the urine sample's chain of custody was reasonably reliable. Cheers relied exclusively on Soto's testimony at the disciplinary hearing in determining whether the discrepancies on the Urinalysis Request form affected the chain of custody. Based on Soto's testimony, it is unclear whether defendants demonstrated "a continuous, physical nexus between the source of the substance in issue, the testing or an analytical process to which the substance is subjected, and the proponent of the substance as real evidence." *Soto v. Lord,* 693 F.Supp. at 17 n. 20. When questioned concerning entries written atop crossed out material and disparate handwriting on the chain of custody section to the Urinalysis Request form, Soto admitted that he did not scratch out the name underneath his nor did he know whose name was entered originally. Colucci Aff. Ex. F at 11.[10] These deficiencies are not merely "possible discrepancies as to the time[ ] the specimen was removed from the refrigerator and the time[ ] the test[ ] w[as] performed," *Price v. Coughlin,* 116 A.D.2d 898, 498 N.Y.S.2d 209, 210 (1986), but are similar to the glaring deficiencies in *Soto v. Lord* that led the District Court to conclude that the continuity form was not credible. *Soto v. Lord,* 693 F.Supp. at 18. Thus, genuine issues of material fact exist both as to the reliability of the

**10.** The hearing transcript states in pertinent part:

Inmate McCormack: Do you also have the person's name on the log who was initially scratched out here?

Off. Soto: I got my name, I took the urinalysis.

Inmate McCormack: Yes, I understand, but who's name is this that's scratched out? I see here that you _____ freezer ...

Lt. Cheers: Did you scratch the name out yourself?

Off. Soto: No.

Lt. Cheers: Oh, okay, then you don't know whose it is then right?

Off. Soto: _____.

Inmate McCormack: You don't know who scratched it out?

Off. Soto: No.

Colucci Aff. Ex. F at 11.

urine sample's chain of custody and as to the refusal to call McGinnis which might have clarified the chain of custody discrepancies.

### 2. Advance Notice of Available Evidence

McCormack's second objection, Cheers's failure to inform him of the Syva letter prior to or during the hearing, focuses on the question of whether Magistrate Judge Grubin should have granted summary judgment on Count III, the claimed denial of due process based on the failure to furnish McCormack with the documents he needed for his defense.[11] That plaintiff raised the issue of the Syva letter for the first time in his objections to the Report is not enough to reject it out of hand. Plaintiff began this suit as a *pro se* litigant, and *pro se* complaints must be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

Plaintiff's argument that he was required to have notice of the Syva letter is justifiable if the Syva letter can be classified as "evidence." "[A]n inmate who is facing prison disciplinary charges that could result in punitive segregation is entitled, at a minimum, to advance written notice of the charges against him and of the evidence available to the factfinder." *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).[12] Besides clarifying "what the charges are, in fact," advance written notice affords "the charged party a chance to marshall the facts in his defense." *Wolff v. McDonnell,* 418 U.S. at 564, 94 S.Ct. at 2968. If, indeed, the Syva letter is considered "evidence," then Cheers deprived McCormack of his due process right to notice of the evidence against him.

This Court finds that Cheers has not demonstrated the absence of genuine issues of material facts with respect to whether the Syva letter is evidence. Even prior to McCormack's hearing, a New York state court had dealt with a similar Syva communication and classified it as evidence. In *Kelemen ex rel. Littles v. Coughlin,* 128 Misc.2d 190, 489 N.Y.S.2d 670 (Sup.Ct.1985), an inmate was required to submit a drug urinalysis after a week long furlough. Both the primary and confirming EMIT tests indicated positive results for cocaine. The prisoner was served with an inmate misbehavior report and a disciplinary hearing was convened. At the hearing, the inmate denied using cocaine and maintained that false positive results occurred because she had used Contac, an over-the-counter drug. To determine whether over-the-counter medication could be the basis for positive test results, the hearing officer adjourned the proceedings and held an off the record telephone conversation with a representative of the Syva technical unit. Based on this conversation, the hearing officer determined that no drug would cause a false positive cocaine urinalysis using the EMIT testing system. Therefore, he found the inmate guilty of drug use, resulting in a disposition of thirty days in keeplock and thirty days loss of good time. The decision was affirmed upon appeal. Subsequently, the inmate brought an Article 78 proceeding alleging that both his due process rights and New York regulations had been violated. The Supreme Court, Orleans County, annulled the determination, finding, *inter alia,* that the conversation between the hearing officer and the Syva representative was off the record testimony. *Kelemen ex rel. Littles v. Coughlin,* 489 N.Y.S.2d at 673.

In *Kelemen ex rel. Littles,* the Syva information was clearly evidence in that it was a verbal response to an issue raised at

---

11. The "Syva letter" is a December 15, 1987 letter from Karen Fogerson, Technical Consultant, Syva Company, to Cheers. It states:

> I am writing *in response* to our telephone conversation today in which *you asked* for enumeration of any compounds or disease states known to cause false positive results with the current EMIT Cannabinoid or Cocaine Assays.
>
> To date, no compounds, drugs or disease states have been identified which are capable of pro-

ducing a positive Cocaine or Cannabinoid test result without the respective drug's presence in the urine sample.

Colucci Aff., Ex. I (emphasis added).

12. Two *Patterson v. Coughlin* cases are cited in this opinion, *Patterson v. Coughlin,* 761 F.2d 886 (2d Cir.1985) and *Patterson v. Coughlin,* 905 F.2d 564 (2d Cir.1990). These cases have the same plaintiff and defendant, but they deal with different prison disciplinary hearings.

the disciplinary hearing.[13] The information Cheers received in the Syva letter does not differ from the knowledge the hearing officer obtained from Syva in *Kelemen ex rel. Littles.* Yet, defendants would have this Court view the Syva letter as analogous to pre-existing knowledge subject to judicial notice because Syva's response addressed a question asked five months before the hearing. Defendants' distinction will not hold. The kinds of information subject to judicial notice are clear. Judicially noticed facts are those not subject to reasonable dispute in that either they are "generally known within the territorial jurisdiction of the trial court," Fed.R.Evid. 201(b)(1); *Carey v. Population Servs. Int'l,* 431 U.S. 678, 695–96, 97 S.Ct. 2010, 2021–22, 52 L.Ed.2d 675 (1977) (judicial notice of fact that incidence of sexual activity among minors was high), or they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2); *Massachusetts v. Westcott,* 431 U.S. 322, 323 n. 2, 97 S.Ct. 1755, 1760 n. 2, 52 L.Ed.2d 349 (1977) (judicial notice of coast guard records); *Austracan (U.S.A.), Inc. v. Neptune Orient Lines, Ltd.,* 612 F.Supp. 578, 584 (S.D.N.Y.1985) (judicial notice of phrase referred to in Department of Transportation publication).[14] Inasmuch as the Syva response is neither a form letter nor a company statement included in a package insert but is rather a specific answer to Cheers's telephone question, it is disputable whether the information was generally known within the territorial jurisdiction. It is similarly questionable whether the Syva letter is capable of accurate and ready determination by resort to the applicable source whose accuracy cannot be questioned in that DOCS own regulations warn of over-the-counter medication causing false positive results.[15] Therefore, genuine issues of material facts remain in dispute as to whether the Syva letter is subject to judicial notice as pre-existing knowledge or is evidence that should have been provided to McCormack at the disciplinary hearing.

There is no question, however, that Cheers could not have taken judicial notice of the information contained in the Syva letter based on the findings of *Peranzo v. Coughlin,* 675 F.Supp. 102 (S.D.N.Y.1987), *aff'd,* 850 F.2d 125 (2d Cir.1988). Although *Peranzo* found that the results of double EMIT testing would be sufficient evidence under the due process clause for a hearing officer to rely on at a disciplinary hearing, *Id.* at 105, it does not assert, as the Syva letter contends, that "no compounds, drugs or disease states have been identified which are capable of producing a positive cocaine or Cannabinoid test result...." Colucci Aff. Ex. I. Instead, *Peranzo* states that even though "*very few* false positives have been produced by any cross-reactivity ... EMIT operators in all facilities routinely ask tested inmates about any medication they might be using and/or check the medical records of tested inmates." *Id.* at 104 (emphasis added). Under *Peranzo,* had Cheers relied only

---

**13.** In fact, the court held that the inmate's due process rights had been violated because the conversation with Syva was held off the record and was not recorded. *Kelemen ex rel. Littles v. Coughlin,* 489 N.Y.S.2d at 673. "The constitutional right of due process requires that when a witness is interviewed, the inmate must either be present or receive a tape or transcript of the interview or an explanation of the denial." *In re Burke v. Coughlin,* 97 A.D.2d 862, 469 N.Y.S.2d 240, 242 (1983) (citing *Powell v. Ward,* 487 F.Supp. 917 (S.D.N.Y.1980), *mod. on other grounds,* 643 F.2d 924 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981)).

**14.** Fed.R.Evid. 201(a) limits the scope of judicial notice to "adjudicative facts." Generally, adjudicative facts are established "through the introduction of evidence, ordinarily consisting of the testimony of witnesses." Fed.R.Evid. 201(a) ad-

visory committee's note. Only when the "particular facts are outside reasonable controversy," do we dispense with testimony and judicially notice the facts. However, in order to determine whether to take judicial notice "[a] high degree of indisputability is the essential prerequisite." *Id.*

**15.** *See, e.g.,* N.Y.Comp.Codes R. & Regs. tit. vii § 1020.4(d)(2):

The inmate shall also be asked if he has been taking any medication in the past month, and the inmate's response shall be noted on the request for urinalysis test form. If the inmate's response is "yes" and the subsequent test results are positive, an inquiry shall be made to medical personnel as to what medications the inmate has received in the past month.

on the test results in making his determination, there may have been no question that he had complied with the requirements of due process. However, by basing his decision on other factors, including information contained in the Syva letter, Cheers cannot now shield himself from providing fundamental constitutional protections by contending that *Peranzo* absolves him of all concern for the inmate's due process guarantees.

### 3. *Fair and Impartial Hearing Officer*

As with the second objection, this Court construes McCormack's *pro se* complaint liberally and considers the third objection that defendants violated his due process rights by denying him the right to a fair and impartial hearing officer. *See, e.g., McCann v. Coughlin*, 698 F.2d 112 (2d Cir.1983). While plaintiff does not list, under a separate count, Cheers's failure to act impartially, he alleges that "Cheers acted in a manner that was partial and denied plaintiff his due process protections ..." Complaint and Jury Demand ¶ 10, and that "Cheers acted in a clearly partial manner as to intentionally deprive plaintiff [of] his constitutional due process rights...." *Id.* ¶¶ 23, 33. These general allegations provide a sufficient basis for the Court to review a possible due process violation against a *pro se* plaintiff.

■ Although "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally," an inmate cannot be denied a fair chance to prevail at the disciplinary hearing because of arbitrary and biased determinations. *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989). Drawing all reasonable inferences in favor of the nonmoving party and recognizing that defendants may have "suppressed evidence ... and never informed [plaintiff] of testimony against him," *Id.*, it is questionable whether the determinations made at the hearing were arbitrary and this Court finds a genuine issue of material fact

concerning whether Cheers was an unbiased and impartial hearing officer.

### 4. *Selsky's Affirmance*

Counts II, IV and VI of plaintiff's complaint charge Selsky with failing to remedy due process violations upon receipt and review of McCormack's appeal. In the Second Circuit, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). The circuit has determined that a supervisory official, such as Selsky, may be held to have been personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 when "after learning of the violation through a report or appeal, [he] may have failed to remedy the wrong." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). Selsky does not deny that he affirmed Cheers's decision nor does he assert separate defenses to the alleged violations. Inasmuch as the Court cannot yet determine whether the hearing itself was conducted in compliance with due process, it is unable to determine whether Selsky was personally involved in the alleged constitutional deprivations.

### B. *Qualified Immunity*

■ The Court now examines whether Cheers and Selsky are exempt from liability under the doctrine of qualified immunity. Qualified immunity provides "that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Fox v. Coughlin*, 893 F.2d 475, 477 (2d Cir.1990).[16] More-

---

**16.** Although often referred to as an affirmative defense, qualified immunity is more aptly described as "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original).

Qualified immunity frees government officials from the substantial costs attendant to litigation. Besides money damages, government officials would not be subjected to "distraction ... from their governmental duties, inhibition of discretionary action, and deterrence of able people

over, qualified immunity applies "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights." *Benitez v. Wolff*, 985 F.2d 662, 666 No. 92–2168, 1993 U.S.App. LEXIS 1837, at *10 (2d Cir. Feb. 3, 1993) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). Qualified immunity does not apply however, when the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039.

The Second Circuit directs courts to consider three factors in determining whether a particular right was clearly established at the time the defendants acted: (1) reasonable specificity of the right in question; (2) support for the existence of the right in question in the decisional law of the Supreme Court and the applicable circuit court; and (3) knowledge by the reasonable defendant official, based on preexisting law, that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

■ This Court finds that in May of 1988, an inmate alleged to have violated prison rules enjoyed clearly established statutory or constitutional rights to call witnesses in his behalf at a disciplinary hearing; to advance notice of the evidence available to the factfinder; and to a fair and impartial hearing officer.

At the time of McCormack's hearing, each of these rights had been defined with reasonable specificity and could be found within Supreme Court and Second Circuit decisional law. The particular right to call witnesses at a disciplinary hearing is subject to refusal for reasons of irrelevance, redundancy or the hazards present in an individual case. *See, e.g., Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979; *McCann v. Coughlin*, 698 F.2d

at 122. Advance notice specifically means that an inmate must be informed of the charges in writing and must be granted at least some brief period of time after the notification to prepare a case. *See, e.g., Wolff v. McDonnell*, 418 U.S. at 564, 94 S.Ct. at 2978; *Patterson v. Coughlin*, 761 F.2d at 890. Finally, the right to a fair and impartial hearing officer, as required under *Wolff v. McDonnell*, 418 U.S. at 571, 94 S.Ct. at 2982 and *McCann v. Coughlin*, 698 F.2d at 122, is codified in N.Y.Comp.Codes R. & Regs. tit. vii § 253.1(b) and entails "a bona fide evaluation of the evidence presented at the hearing, not an arbitrary determination that reduces the hearing to a charade." *Kelemen ex rel. Littles v. Coughlin*, 489 N.Y.S.2d at 673.

■ Moreover, defendants, as "reasonably competent public official[s]" are presumed to have known "the law governing [their] conduct" in these matters. *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S.Ct. at 2738. They "are charged with knowledge of relevant decisional law, especially the decisions of the circuit in which they perform their official duties." *Francis v. Coughlin*, 891 F.2d at 46. Thus, Cheers cannot be shielded from liability for civil damages in that his conduct may have violated clearly established constitutional rights. Similarly, Selsky cannot be shielded from liability as his "actual or constructive notice of [the] unconstitutional practices" imposes supervisory liability upon him for failing to remedy the violations on appeal. *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir.1989). Inasmuch as defendants have not raised any "extraordinary circumstances and ... [proved] that [they] neither knew nor should have known of the relevant legal standard," the Court also finds that it may not have been objectively reasonable for defendants to believe that their acts did not violate plaintiff's constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S.Ct. at 2738. In sum, the Court denies defendants' motion for summary judgment based on the doctrine of qualified immunity.

from public service." *Harlow v. Fitzgerald*, 457 U.S. at 816, 102 S.Ct. at 2737. In addition, the government would be exempt from "broad-ranging discovery and the deposing of ... an official's professional colleagues," which "can be

peculiarly disruptive of effective government." *Id.* at 817, 102 S.Ct. at 2737. Similar to summary judgment, qualified immunity aims to prevent insubstantial claims from proceeding to trial. *Id.* at 816, 102 S.Ct. at 2737.

### C. *Count VII*

■ Count VII of plaintiff's complaint merely states the damages suffered as a result of the due process violations alleged in Counts I through VI, but does not present a claim upon which relief can be granted. A pleading which sets forth a claim for relief must contain a statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Therefore, Count VII is dismissed without prejudice, with leave to plaintiff to amend his complaint to state a cause of action.

### CONCLUSION

For the foregoing reasons, the Court rejects in part and accepts in part Magistrate Judge Grubin's recommendations. Defendants' motion for summary judgment is denied with respect to Counts I, II, III, and IV, and denied in part and granted in part with respect to Counts V and VI. Count VII is dismissed without prejudice for failure to state a claim on which relief can be granted. The parties are directed to complete discovery by June 1, 1993 and to file a joint pretrial order or move for summary judgment by July 2, 1993.

It is so ordered.